## MURRAY, McSWEEN, AND PATTON, CONSTITUTING THE STATE DISPENSARY COMMISSION OF SOUTH CAROLINA, *v.* WILSON DISTILLING COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 625. · Argued February 26, March 1, 1909.—Decided April 5, 1909.

Purchases made by state officers of supplies for business carried on by the State are made by the State, and suits by the vendors against the state officers carrying on or winding up the business are suits against the State and, under the Eleventh Amendment, beyond the jurisdiction of the Federal courts; and so *held* as to suits against commissioners to wind up the State Liquor Dispensary of South Carolina.

A bill in equity to compel specific performance of a contract between an individual and a State cannot, against the objection of the State, be maintained in the Federal courts. *Christian* v. *Atlantic & N. C. R. R.*, 133 U. S. 233.

A state statute will not, by strained implication, be construed as a divestiture of rights of property, or as authorizing administration of the assets of a governmental agency, without the presence of the State, and so *held* as to the statute of South Carolina providing for winding up the State Liquor Dispensary.

The consent of a State to be sued in its own courts by a creditor does not give that creditor the right to sue in a Federal court. *Chandler* v. *Dix*, 194 U. S. 590.

Even though state legislation and decisions as to the construction of state statutes may not be controlling upon this court, yet they may be persuasive.

Although by engaging in business a State may not avoid a preëxisting right of the Federal Government to tax that business, the State does not thereby lose the exemption from suit under the Eleventh Amendment. *South Carolina* v. *United States*, 199 U. S. 437, distinguished.

The legal history of the constitutional provisions and legislative enactments of South Carolina in regard to the State Liquor Dispensary, reviewed.

161 Fed. Rep. 152, reversed.

THE facts are stated in the opinion

*Mr. B. L. Abney*, with whom *Mr. J. Fraser Lyon* was on the brief, and *Mr. W. F. Stevenson*, for petitioners:

The commission, as individuals, have no interest in the fund. They are mere agents holding a fund, with the power, after they shall have determined what is a just liability, to pay the same over out of the fund. The assets are still the assets of the State. Being officers of the State, with the funds of the State in their possession belonging to the State, and these suits being brought by alleged creditors of the State, the State is the real party in interest, and the suit is virtually against the State. See opinion below; *McHose* v. *Dutton*, 55 Iowa, 728; *Brown University Case*, 56 Fed. Rep. 55; *Yale College Case*, 52 Fed. Rep. 177; *Lowery* v. *Thompson*, 25 S. Car. 416; *Board &c.* v. *Gantt*, 76 Virginia, 455; *Louisiana* v. *Jumel*, 107 U. S. 711; *Hagood* v. *Southern*, 177 U. S. 52.

The state dispensary commission are not defending any case of trespass or of wrongs they may have committed towards the persons or property of the complainants under an unconstitutional statute; nor are they affirmatively, through and by means of an unconstitutional statute, injuring the complainants or invading any of their property rights; nor are they attempting to enforce an unconstitutional statute. Consequently, this case does not fall within any class of cases mentioned by the court below, nor is it similar to any of the cases

cited by that court. The action of the court if plaintiff suc-
ceeds will have the effect of depriving the State of funds or
property in its possession. This conflicts with the Eleventh
Amendment. *Louisiana* v. *Jumel*, 107 U. S. 711; *Farmers'
National Bank* v. *Jones*, 105 Fed. Rep. 459; *Christian* v. *Atlan-
tic &c. R. Co.*, 133 U. S. 233; *Brown University* v. *R. I. College*,
56 Fed. Rep. 55; *Lowery* v. *Commissioners of Sinking Fund*, 25
S. Car. 416; *Board of Public Works* v. *Gantt*, 76 Virginia, 455.

The act of 1907 did not create a trust nor divest the State
of all control or disposal of the state dispensary property. It
simply authorizes claimants to sue or to have their claims es-
tablished against it, and to be paid out of a certain fund. Allow-
ing such claims to be established and sued on could not be
construed as admitting the validity of the claim. *Bank* v. *State*,
60 S. Car. 465.

The statute books of the State contain instances where the
legislature has seen fit, instead of making the investigation
through its own committees, to devolve this duty upon certain
persons as commissioners or upon regularly appointed tribunals.
But no state decision has ever held that by such act a contract
was created between the State and the claimants, which dis-
abled the legislature from either modifying or repealing such
statute. *Campbell* v. *Sanders*, 43 S. Car. 577.

If the act of 1907 is nothing more than the creation of a com-
mission before which the State authorizes its creditors to sue
and to have their claims established and adjusted, then it
cannot amount to a contract irrevocable, and this court has
repeatedly so decided: *Beers* v. *Arkansas*, 20 How. 527; *Rail-
road Co.* v. *Tennessee*, 101 U. S. 337; *Railroad Co.* v. *Alabama*,
101 U. S. 832; *Hans* v. *Louisiana*, 134 U. S. 17; *Baltzer* v.
*North Carolina*, 161 U. S. 245; *Ex parte Alabama*, 23 Am. Rep.
567; *In re Ayers*, 123 U. S. 507; *De Saussure* v. *Gaillard*, 127
U. S. 216.

The State by this act expressly devolves the right and duty
upon the commission to investigate, determine and ascertain
the just liabilities against it held by these claimants, and does

not authorize suits to be brought against it to establish such liabilities either in its own courts or in the Federal courts. *Smith* v. *Reeves*, 178 U. S. 436; *Chandler* v. *Dix*, 194 U. S. 590; *Maury* v. *Commonwealth*, 92 Virginia, 310.

The highest court of the State is, except in the matter of contracts, the ultimate tribunal to determine the meaning of its statutes. *Batchel* v. *Wilson*, 204 U. S. 36.

The Federal courts will follow, in this case, the decision of the Supreme Court of the State construing the act of 1907, unless this court shall take the view that that act created a contract with the claimants, creditors of the State, which the State cannot, by subsequent legislation, interfere with. *Elmendorf* v. *Taylor*, 10 Wheat. 150; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *McCullough* v. *Virginia*, 172 U. S. 102; *Mobile Trans. Co.* v. *Mobile*, 187 U. S. 480; *Jack* v. *Kansas*, 199 U. S. 372; *Bacon* v. *Texas*, 163 U. S. 207; *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *De Saussure* v. *Gaillard*, 127 U. S. 216; Lewis' Sutherland Stat. Constr., par. 313.

Where the Federal courts are not by rule bound to follow the decisions of the state courts in cases falling within the exception, they will consider such decisions upon the point in question and will incline to an agreement with the state courts. *Mead* v. *Portland*, 200 U. S. 163; *Blair* v. *City of Chicago*, 201 U. S. 400; *Copper Mining Co.* v. *Territorial Board &c.*, 206 U. S. 474; *Theological Seminary* v. *Illinois*, 188 U. S. 662; *Tampa Waterworks* v. *Tampa*, 199 U. S. 241; *Douglas* v. *Kentucky*, 168 U. S. 502.

*Mr. Daniel W. Rountree*, with whom *Mr. Clifford L. Anderson* and *Mr. Thomas B. Felder* were on the brief, also argued for petitioners.

*Mr. Alfred S. Barnard*, with whom *Mr. George B. Lester* was on the brief, for respondent, the Fleischmann Company:

The winding up act of 1907 created a trust, and the funds in the hands of the commission are a trust fund held by them for the benefit of the creditors of the state dispensary.

If an individual debtor had by a written ·instrument similar in terms to the act of 1907, placed property or funds in the hands of another to be used as directed in said act, that person would become a trustee.  Eliminating all of the foreign matter in this case, it is a plain suit in equity, brought by a *cestui que trust*, to compel a trustee, holding property for his benefit, to perform the duties imposed upon him by the instrument creating the trust.  The only novel feature in this case, and that is more apparent than real, is that the trust was created by a State.  But this is not new and involves no new principle, for that a State or sovereign can create a trust and that a trust so created is enforceable in a court of equity, see Perry on Trusts (5th ed.), § 30; Beach on Trusts and Trustees (1897 ed.), § 3; *Commissioners* v. *Walker*, 6 How. 143; *Board of Liquidation* v. *McComb*, 92 U. S. 541; *Chaffriax* v. *Board of Liquidation*, 11 Fed. Rep. 638; *Swasey* v. *N. C. R. R. Co.*, 23 Fed. Cas. 518.

The same principle is clearly recognized in *Louisiana* v. *Jumel*, 107 U. S. 711; *Vose* v. *Internal Improvement Fund*, 28 Fed. Cas. 1226; *Ford* v. *Delta & Pine Land Co.*, 164 U. S. 662. See also *McKee* v. *Lamon*, 159 U. S. 317; *Bearing* v. *Dabney*, 16 Wall. 1; *Clews* v. *Jamieson*, 182 U. S. 461, 479, 480; *Gibbs* v. *Green*, 54 Mississippi, 592; *Maenhaut* v. *New Orleans*, 2 Woods, 108.

This court is not bound by the decision of the Supreme Court of South Carolina, construing the act of 1907.  The record shows that this decision was rendered in a proceeding in the Supreme Court of South Carolina to which these complainants were not parties, and after the complainants had filed their bills in the United States Circuit Court for the District of South Carolina, and that court had taken jurisdiction and construed the act of 1907.  The complainants were therefore entitled to the independent judgment of the United States Circuit Court in construing that act; and this case is not within the rule which requires this court to follow state decisions in the construction of state statutes.  *Pease* v. *Peck*, 18

How. 595; *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Carroll County* v. *Smith*, 111 U. S. 556; *Anderson* v. *Santa Anna Trp. Co.*, 116 U. S. 356; *Pleasant Improvement Co.* v. *Ætna Life Ins. Co.*, 138 U. S. 67; *Great Southern Hotel Co.* v. *Jones*, 193 U. S. 533; *Wicomico County* v. *Bancroft*, 203 U. S. 112.

This is not a suit against the State. This suit is brought by the complainants as creditors of the state dispensary to compel the defendants to perform specific duties which the legislature of the State has directed them to perform. The purpose of the suit is not to require the defendants to do that which the law of the State forbids, but to compel them to do what the statute says they shall do. *Rolston* v. *Commissioners*, 120 U. S. 390.

The Eleventh Amendment is of necessity limited to those suits in which the State is a party to the record. In deciding who are parties to a suit the court will not look beyond the record. Making a state officer a party, does not make the State a party, although her law may have prompted his action, and the State may stand behind him as the real party in interest. *Osborne* v. *Bank*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 220; *United States* v. *Lee*, 106 U. S. 196; *Board of Liquidation* v. *McComb*, 92 U. S. 531.

Recent cases in which the court says it will, in determining who are the real parties to the suit, look beyond the record, such as in *Louisiana* v. *Jumel*, 107 U. S. 711; *Cunningham* v. *Macon &c. R. R. Co.*, 109 U. S. 455; *Hagood* v. *Southern*, 117 U. S. 70; *In re Ayres*, 123 U. S. 492, can be distinguished as in those cases there was no trust created, and there was no specific fund which the complainants were seeking to reach.

The State is not claiming any interest in the fund in the hands of these defendants, and in order to enforce the trust imposed by the act of 1907, the State is neither a necessary, nor an indispensable, party. *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *Swasey* v. *N. C. R. R. Co.*, 23 Fed. Cas. 518; *Chaffraix* v. *Board of Liquidation*, 11 Fed. Rep. 632; *Tindall* v. *Wesley*, 167 U. S. 220. See also *Ex parte Young*, 209 U. S. 158; *Western*

*Union Tel. Co.* v. *Myatt*, 98 Fed. Rep. 335; *Atlantic Coast
Line R. R. Co.* v. *Virginia Corporation Commission*, 211 U. S.
210.

*Mr. T. Moultrie Mordecai*, with whom *Mr. Frank Carter,
Mr. Simeon Hyde* and *Mr. H. C. Chedester* were on the brief,
for respondent, the Wilson Distilling Company.

MR. JUSTICE WHITE delivered the opinion of the court.

The State of South Carolina in the year 1892 assumed the
exclusive management of all traffic in liquor.  To carry out
this purpose a board of control was created, composed of the
governor, the comptroller general and the attorney general,
clothed with power to supervise the system of liquor traffic
which the act embodied and to adopt general rules and regula-
tions pertaining to the subject.  All liquor intended for con-
sumption was required to be bought by an officer styled a com-
missioner, upon whom was cast the duty of distributing the
liquor to local officials, known as dispensers.  The funds to
initiate the business were drawn from the state treasury.  The
general features of the act of 1892 were preserved in a statute
approved January 2, 1895.  Acts S. Car. 1895, p. 721.  This
last-mentioned act is set out in full in a marginal note to the
opinion in *Scott* v. *Donald*, 165 U. S. 58.  In that case it was
recognized that the act of 1895 provided for the purchase by
the State, through its officers or agents, of all liquor to be sold
in South Carolina, and although the act was held to be re-
pugnant to the Constitution of the United States, the ruling
was not based upon the conception that there was a want of
governmental power in the State to become the sole purchaser
and seller within its borders of liquor, but exclusively upon the
ground that particular provisions contained in the statute dis-
criminated against the products of other States.  A new state
constitution was ratified, which went into effect from and after
December 31, 1895.  Therein it was provided as follows:

Article VIII, section 11, Constitution, 1895.

"In the exercise of the police power the general assembly shall have the right to prohibit the manufacture and sale and retail of alcoholic liquors or beverages within the State. The general assembly may license persons or corporations to manufacture and sell and retail alcoholic liquors or beverages within the State, under such rules and restrictions as it deems proper; or the general assembly may prohibit the manufacture and sale and retail of alcoholic liquors and beverages within the State, and may authorize and empower state, county, and municipal officers, all or either, under the authority and in the name of the State, to buy in any market and retail within the State liquors and beverages in such packages and quantities, under such rules and regulations, as it deems expedient: *Provided*, That no license shall be granted to sell alcoholic beverages in less quantities than one-half pint, or to sell them between sundown and sunrise, or to sell them to be drunk on the premises: *And provided, further*, That the general assembly shall not delegate to any municipal corporation the power to issue license to sell the same."

Article XI, section 12, Constitution, 1895.

"All the net income to be derived by the State from the sale or license for the sale of spirituous, malt, vinous and intoxicant liquors and beverages, not including so much thereof as is now or may hereafter be allowed by law to go to the counties and municipal corporations of the State, shall be applied annually in aid of the supplementary taxes provided for in the sixth section of this article; and if, after said application, there should be a surplus, it shall be devoted to public school purposes, and apportioned as the general assembly may determine: *Provided, however*, That the said supplementary taxes shall only be levied when the net income aforesaid from the sale or license for the sale of alcoholic liquor or beverages are not sufficient to meet and equalize the deficiencies for which the said supplementary taxes are provided."

Under these provisions, in 1896 (Acts S. Car. 1896, p. 123) a new law concerning the liquor traffic was enacted. The statute provided for the election by the general assembly of a state board of control, clothed with power to purchase all liquors for use in the State. A state commissioner, to be appointed by such board, was empowered to furnish liquors to the various local dispensaries provided for in the statute, which were under the immediate authority of county boards having power to appoint officers, known as dispensers, to sell liquors direct to consumers. The act of 1896 was amended in particulars, not necessary to be detailed, in March, 1897. In *Vance* v. *Vandercook, No. 1*, 170 U. S. 438, the contention that the act of 1896, as amended by the act of 1897, was repugnant to the commerce clause of the Constitution of the United States, was passed upon. The limited ruling made in *Scott* v. *Donald* was stated. It was expressly held that the act in question was a manifestation of the police power of the State, and therefore was within the purview of the provisions of the act of Congress commonly referred to as the Wilson Act. It was decided that as the provisions in the prior act, which were held in *Scott* v. *Donald* to be discriminatory, had been eliminated, the act was not repugnant to the commerce clause of the Constitution in so far as it exerted the absolute control of the State over the purchase and sale of liquor within the State.

In *State* v. *Farnum*, 73 S. Car. 165, decided in 1905, the Supreme Court of South Carolina interpreted the dispensary act of 1896 as amended, and expressly held that "The offices and places of business of the dispensary stand precisely in the same relation to the State as the State Treasurer's office." And. speaking of the dispensary system, it was said (p. 171):

"The State has undertaken to take charge of the liquor business of the State, and to prohibit any private person or corporation from dealing in liquor, except as they may find warrant in the Constitution and laws of the United States."

The law of 1896, as amended, was repealed on February 16, 1907. Acts S. Car. 1907, p. 463. The repealing act did away

with the general control of the traffic by means of a state board, and therefore abolished that board.  Instead of the system previously existing a more local one was substituted. . The question whether liquor should be sold in a particular county was left to the voters of the county.  If, as the result of an election, it was determined that the traffic in liquor should exist in the county, it was provided that such traffic should be exclusively carried on by means of county boards, appointed by the governor.  Conformably to the constitution, these boards were authorized to buy, "in the name of the State," liquors to be sold within the county, with a proviso, however, restricting the liability of the State to the sum of the assets of the local dispensary.

On the same day that the foregoing act was approved there was also approved a statute, entitled "An act to provide for the disposition of all property connected with the State dispensary and to wind up its affairs."  The text of this act is in the margin.[1]  Summarily stated, the act created a commission to

[1] An Act to Provide for the Disposition of all Property Connected with the State Dispensary, and to Wind Up Its Affairs.

Section 1. *Be it enacted by the General Assembly of the State of South Carolina,* That immediately upon the approval of this act the governor shall appoint a commission of well-known business men, consisting of five members, none of whom shall be members of the general assembly, to be known as the state dispensary commission, who shall each give bond for the faithful performance of the duties required, in the sum of $10,000.

Sec. 2. Said commission shall immediately organize by the election of a chairman and secretary from their number.

Sec. 3. It shall be the duty of said commission to close out the entire business and property of the state dispensary except real estate, and including stock in the several county dispensaries, by disposing of all goods and property connected therewith, by collecting all debts due and by paying from the proceeds thereof all just liabilities at the earliest date practicable.  Said commission shall be at liberty to make such disposition upon such terms, times and conditions as their judgment may dictate: *Provided,* That no alcoholic liquors or beers shall be disposed of within this State except to county dispensary boards, and all liquors illegally bought by the present management may be returned to

consist of five members, to be appointed by the governor, who were required to give bond to the State for the faithful discharge of their duties. To this body was given the control of all the funds, assets and property, other than real estate, of the state dispensary. It was made the duty of the commission to investigate all facts concerning outstanding claims against the state dispensary, and for that purpose to employ counsel as might be approved by the attorney general, and such expert accountants and clerks as were necessary, and to make full report to the governor on the subject. The commission was also authorized, after investigation, to pay, from the proceeds of the dispensary assets which might come into its hands, such claims as were found to be valid and to turn over the surplus to the state treasury.

The commission thus authorized was appointed and began the discharge of its duties. To this end a list of the outstanding claims asserted to be due was made up and a hearing concerning their amount and validity was commenced. For the purpose

the persons, firms or corporations from whom purchased, and for determining the legality of said purchases they are hereby authorized and directed to investigate fully the circumstances surrounding all contracts for liquors, and to employ such assistant counsel as may be approved by the attorney general, and such expert accountants and stenographers and any other person or persons the commission may deem necessary for the ascertainment of any fact or facts connected with said state dispensary and its management or control at any time in the past, and to take testimony, either within or without the State: *Provided further,* That all payments shall be made in gold and silver coin of the United States, in United States currency, or in national bank notes.

Sec. 4. The compensation of each member of said commission shall be $5 per day for each day actually employed about the business, and actual expenses for the time engaged: *Provided,* That they shall receive no compensation for services rendered on this commission after January 1, 1908.

Sec. 5. The said commission shall pay to the state treasurer, after deducting their compensation and other expenses allowed by this act, all surplus funds on hand after paying all liabilities.

Sec. 6. The said commission is hereby authorized to employ such bookkeepers, accountants, clerks, assistants and employés as they may

of this hearing a call was made by the commission for the production by the parties asserting claims of original books of entry, showing the previous transactions with the State from which the claims arose and the production for oral examination of certain witnesses. The right of the commission to enter upon this investigation was disputed by some of the claimants and they refused to comply with the call made for books and papers and the production of witnesses. Thereupon certain of such claimants invoked the authority of the Circuit Court of the United States for the District of South Carolina by the commencement of the suits which are now before us. The first was brought against the members of the commission by the Wilson Distilling Company, a New Jersey corporation, having its principal place of business in the city of Baltimore, the bill being filed not only on its own account but on behalf of all others who might join in the cause. The complainant in the second suit, which was also against the members of the commission, both officially and individually, was the Fleischmann Company, an Ohio corporation. Without detailing the proceedings by which

deem necessary, and to contract with them at the time of employment for their compensation.

Sec. 7. The said commission shall submit to the governor, at the earliest day practicable, a complete inventory of all property received by them, with a statement of the liabilities of the state dispensary, and as soon as the affairs are liquidated a report in full of their actings and doings.

Sec. 8. That said commission shall have full power and authority to investigate the past conduct of the affairs of the dispensary, and all the power and authority conferred upon the committee appointed to investigate the affairs of the dispensary, as prescribed by an act to provide for the investigation of the dispensary, approved 24th January, A. D. 1906, be, and hereby is, conferred upon the commission provided for under this act: *Provided*, That for the purpose of the investigation of the affairs of the dispensary, as herein provided, each and every member of said commission be, and hereby is, authorized and empowered, separately and individually, or collectively, to exercise the power and authority herein conferred upon the whole commission.

Approved the 16th day of February, A. D. 1907.

other claimants were joined as co-complainants in the Wilson suit and by which the relief sought in that case and in the Fleischmann case—which was somewhat divergent in the earlier stage of the litigation—was made to harmonize, it suffices to say that in their ultimate form both bills of complaint rested the jurisdiction of the court upon diversity of citizenship, asserted the existence of a valid claim against the dispensary fund in favor of each complainant for liquor sold, and that each was entitled to be paid out of the fund in the hands of and under the control of the commission. The bills also proceeded upon the theory that the act of 1907 had placed the assets of the dispensary in the hands of the commission as a trust fund for the benefit of all creditors having valid claims against the fund, which they were entitled to enforce by judicial action against the commission, without the presence of the State as a necessary party. Upon this assumption and upon the averment that the members of the commission were refusing to discharge the duty cast upon them by the state law, of ascertaining and paying the just claims against the trust fund, an injunction was prayed, restraining the commission from in any way disposing of the fund until the claims of the complainants were paid. A receiver was also asked for the purpose of taking charge of the assets, paying the valid claims against the same, including those of the complainants, and otherwise settling, under the direction of the court, the affairs of the state dispensary.

In both cases a temporary restraining order was allowed, and a rule was granted to show cause why an injunction *pendente lite* should not be made and a receiver appointed as prayed. Again omitting detail as to the form of the pleadings, it suffices to say that, by return to the rules to show cause and by answers, the commission, besides traversing most of the averments contained in the bills, set up in substance that each suit was against the State, and that the State had not consented to be sued, and could not be impleaded without violating the Eleventh Amendment to the Constitution. It was expressly averred that the assets and property in the hands of the commission belonged to

the State, were held by the commission as its agent and could not be administered without the presence of the State, which was an indispensable party to the cause. The claim was also made that the commission was a judicial tribunal and was not subject to be restrained by an injunction from a Federal court.

After the allowance of the temporary restraining order in the Fleischmann case, various banks in which the commission had deposited to its credit dispensary funds were made parties defendant, and enjoined from paying out such funds except upon the order of the court. Subsequently, in the same case, after a hearing on January 29, 1908, upon the rule to show cause, an order was entered on March 2, 1908, continuing the temporary restraining order until the final determination of the suit. The motion for the appointment of a receiver was, however, continued without prejudice. The opinion of the court is reported in 161 Fed. Rep. 152. A like order was also cotemporaneously entered in the Wilson case, and in that case, likewise, an order was entered on March 5, 1908, making the banks who had the dispensary funds on deposit parties defendant, and restraining them from paying them out. In this connection it is to be remarked that the banks who were thus restrained in both cases, as security for the dispensary funds placed with them by the commission, had each delivered to that body bonds, stock and other collaterals, and the same had been by the commission deposited in the state treasury.

After the submission and before the court had decided the rules to show cause the legislature of South Carolina passed two statutes concerning the state dispensary fund. By the first the winding up act of 1907 was amended by increasing the compensation of the commission, by directing the sale of the dispensary real estate, etc., and the payment out of the fund of a certain judgment for damages. The eleventh section of the act was amended so as to read as follows:

"SEC. 11. That said commission is hereby declared to possess full power to pass upon, fix and determine all claims against the State growing out of dealings with the dispensary, and to

pay for the State any and all just claims, which have been sub-
mitted to and determined by it, and no other, out of the assets
of the dispensary which have been, or may hereafter be col-
lected by said State dispensary commission: *Provided,* That
each and every person, firm or corporation presenting a claim
or claims to said commission shall have the right to appeal to
the Supreme Court as in cases at law: *Provided further,* That
notice of intention to appeal shall be served upon said commis-
sion within ten days of rendition of judgment by the said com-
mission, and the practice in taking all steps in perfecting the
appeal shall conform to the practice in other appeals to the
Supreme Court." Laws 1908, p. 1289.

By the second act the commission was directed to pay fifteen
thousand dollars into the state treasury, to be used for the ex-
penses of criminal prosecutions for violations of the laws rela-
ting to "the late institution called the State dispensary." The
commissioners refused to pay out of the dispensary funds in
their hands the fifteen thousand dollars directed by the last-
mentioned statute, on the ground that they were under an in-
junction from the Circuit Court of the United States. There-
upon the attorney general of the State began proceedings by
mandamus in the Supreme Court of South Carolina to compel
compliance with the act. The case was decided on March 14,
1908. The court, in an elaborate, careful and perspicuous opin-
ion, reviewed the dispensary legislation, expressly held that
the statutes governing the same made the State the purchaser
of the liquors bought for consumption, and, therefore, that
those who had sold the liquor to the state dispensary had con-
tracted with the State, and with the State alone; that all the
assets and property of the dispensary belonged to the State, and
that the commissioners appointed to wind up and liquidate
its affairs were state officers, entrusted with a public duty on
behalf of the State. As a result of these conclusions it was de-
termined that the Circuit Court of the United States was with-
out jurisdiction to enjoin the commissioners as state officers
from disposing of the state property as the state statute di-

rected, and therefore a right existed to a peremptory manda-
mus. The issuing of the peremptory writ, however, was left in
abeyance, the court—doubtless for the purpose of avoiding an
unseemly conflict with the Circuit Court—saying that it would
not assume "that the construction which it has placed upon
the state constitution and the statutes in question will be dis-
regarded by the Federal court." 79 S. Car. 316. A few days
before this decision was announced, and in consequence of rep-
resentations made to the Circuit Court that a bill had been
introduced in the general assembly of South Carolina directing
the commission to turn into the state treasury the dispensary
funds, the Circuit Court appointed the members of the com-
mission temporary receivers of the fund, with directions to
hold the same subject to the orders of the court. Subsequently,
on March 9, 1909, the Circuit Court entered an order, consoli-
dating the two causes, and appointing three persons receivers
of the dispensary fund, two of those thus appointed being at
that time, or having been shortly prior thereto, members of
the commission.

Following the decision of the Supreme Court of South Caro-
lina in the case last referred to, and on March 27, 1908, the de-
fendants in the consolidated causes filed a motion "for an order
revoking the former orders of the said court, granting an injunc-
tion and appointing receivers, on the ground that the Supreme
Court of South Carolina has now construed the statutes of
South Carolina and the constitution of the said State, under
which the complainants claim their rights, and has construed
it differently from the said Circuit Court's construction which
construction, if followed, ousts the jurisdiction of the Circuit
Court." The motion was denied. 161 Fed. Rep. 162. There-
after the Wilson Distilling Company, by leave, filed in the con-
solidated cause an amendment to its bill, setting up the claim
that the "acceptance by the defendants constituting the said
dispensary commission, as trustees, of the trust created by said
act [of February 16, 1907], and the acceptance by the complain-
ants and the other creditors of said State dispensary, as *cestuis*

*que trust*, of the benefits of the trust so created, constituted a valid, binding and irrepealable contract within the meaning and protection of the Constitution of the United States, and of article 1, section 10, thereof, the protection whereof is hereby expressly claimed by your orators." Following said averment it was alleged that the act approved February 24, 1908, heretofore referred to, was repugnant to Art. I, § 10, of the Constitution of the United States, and to the Fourteenth Amendment, "for that same impairs and attempts to impair the obligation of the contract set out in the last preceding paragraph hereof, and deprives and attempts to deprive the complainants of their property without due process of law, and denies, and attempts to deny, to them the equal protection of the law, in violation of the aforesaid provisions of the Constitution of the United States," In a separate paragraph it was averred that the object and purpose of the institution of the mandamus suit in the state court "was to hinder, delay and defeat the enforcement by this court of the trust created by said act of 1907, and the administration of said trust by this court in the above-entitled causes." The Circuit Court on its own motion made an order directing the payment to the attorney general of South Carolina of the sum of fifteen thousand dollars upon his application therefor, and modified the former orders of the court to the extent necessary to permit the receivers to make such payment.

To reverse the interlocutory orders granting an injunction *pendente lite* and appointing receivers, an appeal was prosecuted to the Circuit Court of Appeals for the Fourth Circuit by the three members of the commission then in office, officially and individually, and by certain of the banks which had been made defendants. The Circuit Court of Appeals on September 15, 1908, affirmed the action of the lower court. 162 Fed. Rep. 1. This writ of certiorari was thereupon allowed.

Underlying all the contentions made in the cause is the fundamental question whether the suits were in substance suits against the State, and therefore beyond the jurisdiction of the

Circuit Court, because of the express prohibition of the Eleventh Amendment. As that question is the pivotal one, we come at once to its consideration.

If we consider as an original question the provisions of the constitution of South Carolina on the subject and the terms of the statutes of that State establishing the dispensary system, we think it is apparent that the purchases which were made by the state officers, or agents, of liquor for consumption in South Carolina, were purchases made by the State for its account, and, therefore, that the relation of debtor and creditor arose from such transactions between the State and the persons who sold the liquor. And this irresistible conclusion, arising from the very face of the constitution and statutes, is removed beyond all possible controversy by the decision of this court in *Vance* v. *Vandercook, No. 1, supra,* and by the construction given by the Supreme Court of South Carolina to the state statute prior to the commencement of this litigation, in *State* v. *Farnum, supra,* as well as by the convincing opinion expressed by that court in reviewing the state statutes in the mandamus case already referred to as reported in 79 S. Car. 316.

We could not therefore sustain the exercise of jurisdiction by the Circuit Court without in effect deciding that the State can be compelled by compulsory judicial process to perform a contract obligation. It is certain that, at least by indirection, the bills of complaint sought to compel the State to specifically perform alleged contracts with the vendors of liquor by paying for liquor alleged to have been supplied. But it is settled that a bill in equity to compel the specific performance of a contract between individuals and a State cannot, against the objection of the State, be maintained in a court of the United States. Thus, in *Hagood* v. *Southern,* 117 U. S. 52, where, in suits brought in a court of the United States against officers and agents of the State of South Carolina, the holders of certain revenue scrip of the State endeavored to enforce the redemption thereof according to the terms of the statute, in pursuance of which the scrip was issued, which statute was al-

leged to constitute an irrepealable contract, the court said (p. 87):

"Though not nominally a party to the record, it [the State] is the real and only party in interest, the nominal defendants being the officers and agents of the State, having no personal interest in the subject-matter of the suit, and defending only as representing the State. And the things required by the decrees to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the State. The State is not only the real party to the controversy, but the real party against which relief is sought by the suit; and the suit is, therefore, substantially within the prohibition of the Eleventh Amendment to the Constitution of the United States, which declares that 'The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State.' "

In the subsequent case of *Christian* v. *Atlantic & N. C. Railroad*, 133 U. S. 233, by bill in equity, filed in a court of the United States, it was attempted to reach dividends on the stock of the defendant railroad company, and apply such dividends to the payment of the bonds issued by the State of North Carolina, and for the sale of stock owned and held by the State. It was contended for the complainants that the proceeding was *in rem* against the stock to enforce a right in and to it resulting from an alleged contract by which the stock was pledged for the benefit of the complainants, although the stock was not actually delivered to the alleged pledgee. It was held that the mere declaration by the State in a statute that stock held by it was pledged did not technically operate to create a pledge. Upon the hypothesis that a mortgage of the stock might have been effected, it was said (p. 243):

"The proceeding is a suit against the party to obtain, by decree of court, the benefit of the mortgage right. But where the mortgagor in possession is a sovereign State, no such pro-

ceeding can be maintained. The mortagee's right against the State may be just as good and valid, in a moral point of view, as if it were against an individual. But the State cannot be brought into court or sued by a private party without its consent. It was at first held by this court that, under the Constitution of the United States, a State might be sued in it by a citizen of another State, or of a foreign State; but it was declared by the Eleventh Amendment that the judicial power of the United States shall not be construed to extend to such suits. *New Hampshire* v. *Louisiana*, 108 U. S. 76; *Louisiana* v. *Jumel*, 107 U. S. 711; *Parsons* v. *Marye*, 114 U. S. 325; *Hagood* v. *Southern*, 117 U. S. 52; *In re Ayers*, 123 U. S. 443."

The complainants below, however, insist that if it be conceded that under the state dispensary statutes the relation of the State and the sellers of liquor was that of debtor and creditor, the general assembly of South Carolina in the winding up act of 1907 intended to and did alter that relation, because the State, by that act, renouncing its control over the assets of the state dispensary, vested the commission with the title to such assets as trustees of an express trust, and constituted the creditors of the State who had furnished supplies for the use of the dispensary the beneficiaries of such trust. The argument being that hence the suits are not against the State, and therefore are not within the inhibition of the Eleventh Amendment. It cannot be and is not denied that the construction of the winding up act, upon which the contention rests, is contrary to that entertained both by the general assembly of South Carolina and by the highest court of the State, but it is urged that the statutes of 1908, in respect to the dispensary fund and the opinion of the Supreme Court were, the former enacted and the latter announced after this litigation was commenced. But if we assume that the legislation and decision referred to are not controlling, yet they are persuasive. Aside from this, however, considering the text of the winding up act, we are of opinion that there is no just ground for the conclusion that the State, in providing by that legislation for the liquidation of the affairs

of the state dispensary, intended to divest itself of its right of property in the assets of that governmental agency, and to endow the commissioners with a right and title to the property which placed it so beyond the control of the State as to authorize a judicial tribunal to take the assets of the State out of the hands of those selected to manage the same, and by means of a receiver to administer such assets as property affected by a trust, irrevocable in its nature, and thus to dispose of the same without the presence of the State.

An interpretation of the act in question, producing such an abnormal and extraordinary result as that just stated, cannot be adopted merely because it might be sustained by strained implications. On the contrary, such interpretation could only be warranted if exacted by the most express language or by such overwhelming implication from the text as would leave no room for any other reasonable construction. Coming to consider the act, it is patent that neither by express language nor by necessary implication does it convey the meaning which the proposition seeks to give to it. In form the winding up statute is but an ordinary act of legislation, providing, in the interest of the State, for an examination and liquidation of the claims against the dispensary and their payment out of the state assets when liquidated; so as to secure the State against unjust claims and preserve its interest in the fund. The act does not, in express terms, make any change in the theretofore existing relation of debtor and creditor between the State and the vendors of liquor under the state dispensary act. The conception that an irrevocable trust was intended to be created is negatived by the requirement in the first section, for the giving by each member of the commission of a bond for the sum of ten thousand dollars, conditioned for the faithful performance of the duties imposed. So also the wide discretion vested in the commission by § 3, empowering it to arrive at a determination as to the legality of purchases of liquor previously supplied by a full investigation of the circumstances "surrounding all contracts for liquors," and subjecting to the approval of the attorney

general of the State the employment of counsel to make such investigation, precludes the inference of an intention on the part of the general assembly to terminate its control over the fund. And the fact that the legislature deemed that the statute was but an ordinary act of legislation over a subject designed to be continued within legislative control is, we think, clearly manifested in the eighth section of the act, which reads as follows:

: "SEC. 8. That said commission shall have full power and authority to investigate the past conduct of the affairs of the dispensary, and all the power and authority conferred upon the committee appointed to investigate the affairs of the dispensary, as prescribed by an act to provide for the investigation (27) of the dispensary, approved January 24th, A. D. 1906, be and hereby is, conferred upon the commission provided for under this act; provided, that for purposes of the investigation of the affairs of the dispensary as herein provided, each and every member of said commission be, and hereby is, authorized and empowered, separately and individually, or collectively, to exercise the power and authority herein conferred upon the whole commission."

The absence in the winding up act of a provision conferring authority to review in the ordinary courts of justice the action of the commission concerning claims, instead of supporting the contention that the State had abandoned all property right in the funds placed in the hands of the commission, tends to a contrary conclusion, since it at once suggests the evident purpose of the State to confine the determination of the amount of its liability to claimants, to the officers or agents chosen by the State for that purpose. And it is elementary that even if a State has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the State in a court of the United States. *Smith* v. *Reeves*, 178 U. S. 436, and cases cited; *Chandler* v. *Dix*, 194 U. S. 590. The situation, therefore, was not changed as a result of the subsequent act of February 24, 1908, giving the creditors of the State,

whose claims might be adversely acted upon by the commission, the right to a review in the Supreme Court of the State.

The decision of the questions arising upon this record relating, as they do, to rights and remedies of a mere contract creditor of the State of South Carolina, is not in anywise controlled by the ruling in *South Carolina* v. *United States*, 199 U. S. 437, where, although recognizing that official dispensers of liquors under the laws of South Carolina were agents of the State, it was held (p. 463) "that the license taxes charged by the Federal Government upon persons selling liquor are not invalidated by the fact that they are the agents of the State, which has itself engaged in that business." That case was concerned with the power of a State, by virtue of its legislation in regard to the sale and consumption of liquor, to destroy a preëxisting right of taxation possessed by the Government of the United States. The ruling in this case but enforces an exemption of the State from suit in the courts of the United States upon its contract debts, an exemption which existed by virtue of the Constitution of the United States at the time when the legislation was enacted out of which the alleged contracts arose.

Deciding as we do that the suits in question were suits against the State of South Carolina, and within the inhibition of the Eleventh Amendment, the decree of the Circuit Court of Appeals is reversed; the decree of the Circuit Court is also reversed, and the cause remanded to that court with instructions to dismiss the bills of complaint.

*And it is so ordered.*


THE CHIEF JUSTICE took no part in the consideration or disposition of this case.