NA-JA CONSTRUCTION CORPORA-
TION, Plaintiff,

v.

Harry B. ROBERTS, Jr., John D. Daniello, Joseph F. Dayton, Commissioners of Levy Court of New Castle County, Delaware, Defendants.

Civ. A. No. 3197.

United States District Court
D. Delaware.

Oct. 10, 1966.

H. Alfred Tarrant, Jr., and Piet H. van Ogtrop of Cooch & Taylor, Wilmington, Del., for plaintiff, C. Edmund Wells, of Wells, Campbell, Reynier & Yohn, Pottstown, Pa., of counsel.

Lawrence M. Sullivan, Wilmington, Del., for Levy Court of New Castle County.

## OPINION

LAYTON, District Judge.

Plaintiff, a Pennsylvania corporation, has sued defendant, Commissioners of Levy Court of New Castle County (county government), Delaware, for the balance allegedly due it on a sewer construction contract. Defendant has moved to dismiss upon these grounds:

(1) Sovereign immunity;

(2) Lack of diversity because in reality this is a suit against the State of Delaware barred by the 11th Amendment of the Federal Constitution;

(3) Even though there may be a waiver of immunity from suit in the state courts, such waiver does not extend to suits in the Federal Courts, notwithstanding diversity of citizenship.

■ The principle of sovereign immunity is based upon the proposition that the United States, the individual states, and the governmental subdivisions of the states are not liable to suit without their consent. This principle was written into the basic law of Delaware by the Delaware Constitution of 1776. Shellhorn & Hill, Inc. v. State, 187 A.2d 71 (Del. 1962).

■ However, such a defense is capable of being waived. While such waiver or consent to be sued usually is done explicitly by Constitutional provision or statute, it may be implied. George & Lynch, Inc. v. State, 197 A.2d 734 (Del. 1964). In that case, the Delaware State Highway Department sued defendant upon a highway contract and defendant counterclaimed against the State. The State interposed the defense of sovereign immunity to the counterclaim. The Supreme Court of Delaware rejected the defense on the theory that where a state legislature by law authorizes a department of the state to enter into contracts, such authorization constitutes a waiver of sovereign immunity. The Court said, inter alia:

"By 17 Del.C. § 132(b) (9), the State Highway Department is authorized to 'make and enter into any or all contracts, agreements or stipulations.' It must be assumed that the General Assembly, in granting to the State Highway Department the power to contract, intended that it should have power to enter into only valid contracts. A valid contract is one which has mutuality of obligation and remedy between the parties to it. 1 Williston on Contracts (3d Ed.) § 1. It follows, therefore, that in authorizing the State Highway Department to enter into valid contracts the General Assembly has necessarily waived the State's immunity to suit for breach by the State of that contract.

"Any other conclusion would ascribe to the General Assembly an intent to profit the State at the expense of its citizens. We are unwilling to assume that the General Assembly intended the State to mislead its citizens into expending large sums to carry out their obligation to the State and, at the same time, deny to them the right to hold the State accountable for its breach of its obligations. To state the proposition is to demonstrate its injustice; indeed, so unjust is it that it might amount to the taking of property without due process of law. * * *"

■ By very strong analogy, the above language applies to the facts here. 9 Del.C. § 1521 authorizes the Levy Courts,

inter alia, to contract for the construction of sewers. The contract in this case grows out of the construction of a sewer. Even more persuasive is the fact that 9 Del.C. § 379 states that all suits brought by the Levy Courts pursuant to the administration of county government " * * shall be in the name of the Levy Court of the County." Surely the power to sue implies a liability to be sued.[1] Cowles v. Mercer County, 7 Wall. 118, 122, 19 L.Ed. 86 (1868).

■ It is my view that the Supreme Court of Delaware, if faced with the exact facts of this case, would hold that the defense of sovereign immunity had been waived. I so hold.

Next, defendant argues that aside from the defense of sovereign immunity, there is no diversity jurisdiction because the Levy Court is in practical effect the State of Delaware and the 11th Amendment[2] constitutes a bar. In support of this argument, defendants cite State v. Warwick, 9 Terry 568, 48 Del. 568, 108 A.2d 85 (Super.Ct.Del.1954), where Judge Terry, for the Delaware Superior Court, distinguished counties organized as bodies politic and corporate from those in this state, stating:

> "Our system of county government is in sharp contrast to that of Michigan and represents the second or other category as indicated above. Under our constitutional and statutory provisions counties, while containing defined territorial areas, are in legal significance nothing more than political subdivisions of our State. * * *" 108 A.2d at 89.

■ However, while the federal courts should regard state decisions and statutes with respect, the ultimate determination in matters of this sort must be in

the federal courts. White v. Umatilla County, 247 F.Supp. 918 (D.Ore.1965). It is to be noticed that the *Warwick* case represents an unusual situation in a criminal case brought by the State against defendant prothonotary (Clerk) of the Superior Court of the County under an indictment providing penalties for embezzlement by clerks of corporate bodies. Employing the strict construction demanded in criminal cases, the Court found that defendant was not a clerk of a corporate body.

But this is far different from the case at hand. Here the defendant, a county, is sued upon a sewer contract which the County by law was authorized to enter into. Dozens of authorities support the proposition that an organized county is a citizen for the purposes of diversity. White v. Umatilla County, supra, Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); Pettibone v. Cook County, Minnesota, 120 F.2d 850 (8 Cir. 1941). In *Luning*, the Supreme Court of the United States dismissed an argument similar to the defendant's here somewhat brusquely, stating:

> "With regard to the first objection, it may be observed that the records of this court for the last 30 years, are full of suits against counties; and it would seem as though by general consent the jurisdiction of the federal courts in such suits had become established." 133 U.S. at 530, 10 S.Ct. at 363.

See also Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 63, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (dissenting opinion); Cameron County Water Imp. Dist. No. 1 v. Ashton, 81 F.2d 905, 908 (5 Cir. 1936); Henrietta Mills Co. v. Rutherford County, 26 F.2d 799 (W.D.N.C.1928); Wright, Federal Courts, § 46, p. 151.

---

1. Defendant makes some point of the fact that this suit is against three individuals, Commissioners of the Levy Court of New Castle County. In the light of 9 Del.C. § 379, I shall require plaintiff to amend and sue defendant by its proper corporate title.

2. "The judicial power of the United States shall not be construed to extend to any suit * * * prosecuted against any one of the United States by Citizens."

But in examining these authorities, it is to be noted that in most cases the counties involved were, by statute or state constitution, clearly constituted independent, corporate, political bodies. And even in *Luning* where the court flatly stated that counties were not entitled to immunity under the 11th Amendment, the Supreme Court went on to demonstrate that counties in Nevada were distinct legal entities having a high degree of independence. In White v. Umatilla County, supra, the Court examined with care the various acts of Oregon and determined that Oregon counties enjoyed such a degree of independent sovereignty as to entitle them to sue and be sued as separate entities. Applying the standards adopted by that court, we have, on the one hand, *Warwick*, holding that counties in Delaware are not independent, political bodies, together with such statutes as 9 Del.C. § 378, holding that counties of this State do not even have the power to hold land in their names. On the other hand, there are the many statutes granting to Delaware counties a considerable degree of self-autonomy. For instance, the Levy Court can,

| | | |
|---|---|---|
| (1) | Promulgate its own rules of government. | 9 Del.C. § 317 |
| (2) | Manage its business and finances. | Sec. 341(a) |
| (3) | Raise money by taxation. | Sec. 345 |
| (4) | Award public works contracts. | Sec. 371 |
| (5) | Maintain its own police force. | Sec. 1903 |
| (6) | Borrow money and issue bonds. | Sec. 502 |
| (7) | Construct sewers, sewage disposal plants, etc. | Sec. 1521 |
| (8) | Other projects of a public nature. | Secs. 601 et seq. 701 et seq. |
| (9) | Control zoning. | Sec. 2601 |

---

While the answer to this question may well be rested on the flat proposition that counties are not exempted from suit under the 11th Amendment, it is perhaps desirable to point out yet another reason why defendant's argument cannot be accepted.

In the final analysis, the answer is to be found in the true meaning and interpretation of the 11th Amendment. The United States Supreme Court in In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887) stated:

" * * * The very object and purpose of the eleventh amendment were to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties. It was thought to be neither becoming nor convenient that the several states of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons, whether citizens of other states or aliens, or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests. To secure the manifest purposes of the constitutional exemption guaranteed by the eleventh amendment, requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. * * * "

The point of inquiry, then, should be whether the suit, no matter how entitled, is one in which the right asserted and the relief asked is against the State. So viewed, the answer is clear. This suit, properly entitled, not only is against

the Levy Court of New Castle County but also affects the right of a party to recover monies, not from the State, but from the county for alleged breach of a contract which the county had full power to enter into. The right asserted and the relief asked are against the county. A judgment against the defendant would thus be paid, not from the State, but rather the county, treasury. The contract forming the basis of the suit is, thus, not of State concern. Accordingly for the purposes of diversity jurisdiction, I hold that the 11th Amendment is no bar to this action.

Defendant Levy Court makes another argument, related both to the questions of the diversity jurisdiction and sovereign immunity. It argues that, even though there may be a waiver of immunity insofar as the Delaware State courts are concerned, there has been no waiver extending to suits in the Federal District Court. In other words, it is contended this suit can be litigated only in the State courts. In Murray v. Wilson Distilling Co., 213 U.S. 151, 172, 29 S.Ct. 458, 53 L.Ed. 742 (1909), the Supreme Court stated that the fact that a state has consented to be sued in its own courts does not create a right to be sued in a federal court. It is important to note, however, that the Court there decided that the lawsuits in question were against the State of South Carolina itself, the state was the real party in interest, and that the suit was, therefore, barred by the language of the 11th Amendment. 213 U.S. at 173, 29 S.Ct. 458.

The *Murray* case, therefore, is not decisive of the question of waiver of immunity of a political subdivision within the state, if it is characterized as a "citizen" for purposes of the diversity statute. The Levy Court having been determined to be a separate "citizen" for diversity purposes, and there having been a waiver of immunity by the Levy Court in Delaware State courts, there is a waiver of immunity in the Federal courts as well. Markham v. City of Newport News, 292 F.2d 711 (4 Cir. 1961); Wright, Federal Courts § 46, p. 151.

Defendant's motion to dismiss is denied.