**Leonard GREGORY, Plaintiff,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Claudia Wilkes, Becky Dickson, Oscar Rucker, U.S. Department of Housing and Urban Development, Lonna Blue, and Charles Stigger, Defendants.**

No. CIV.A.2:03–1651–18.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 29, 2003.

Chalmers Johnson, Charleston, SC, for plaintiff.

Michael Scardato, Charleston, SC, John H. Douglas, Charleston, SC, for defendant.

## ORDER

NORTON, District Judge.

## I. Background

In the context of motions to dismiss, this court views the facts in a light most favorable to the non-moving party, *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991); therefore, the court accepts the plaintiff's version of the facts.

Plaintiff alleges that the South Carolina Department of Transportation ("SCDOT") began exercising the state's power of eminent domain in gathering property for the Cooper River Bridge project. Plaintiff alleges that the SCDOT was under a duty to give fair market value for these properties, and further that the SCDOT breached this duty to him with regard to three pieces of property. Plaintiff contends that the SCDOT systematically devalued his and other properties owned by African Americans and "white citizens who owned property in the mostly black neighborhood." (Compl.¶ 16.) Plaintiff claims that the SCDOT and its agents Claudia Wilkes, Becky Dickson, and Oscar Rucker (the "state defendants") threatened, intimidated, and coerced him into selling his properties for a price less than fair market value. Plaintiff claims that the state defendants targeted him and his neighborhood for a systematic undervaluation appraisal because of his race. After the alleged undervaluation, plaintiff and the state defendants reached an agreement on the selling price for one of plaintiff's properties before condemnation proceedings were begun and on the other two properties after condemnation proceedings were begun. During these negotiations, plaintiff exercised his rights under the Eminent Domain Procedures Act. Plaintiff drew down the proceeds that had been placed with the Clerk of Court by the SCDOT and continued to seek more compensation for the properties. Plaintiff employed a real estate agent to assist him in negotiations with the SCDOT, and ultimately, plaintiff reached a settlement with regard to all three properties, and the condemnation proceedings were settled and ended. Plaintiff brought the present action claiming that he only agreed to the purchase prices because of defendants' threats and intimidation, and now, due to his acceptance of prices under market value, he cannot afford similar properties in his old neighborhood.

Plaintiff also alleges that he first sought redress in this matter from the United States Department of Housing and Urban Development ("HUD"). Plaintiff claims that he filed a complaint with HUD's Atlanta Fair Housing and Equal Opportunity Office, and that HUD and its agents, defendants Blue and Stigger (the "federal defendants"), failed to investigate the complaint and interfered with rights guaranteed him under the Fair Housing Act.

## II. Legal Analysis

### A. The Eleventh Amendment and the SCDOT

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. By its explicit terms, the language of the Eleventh Amendment applies only to suits against a

state by citizens of another state, but the Supreme Court has extended the Amendment's applicability to suits by citizens against their own states. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 664–665, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The practical effect of the Eleventh Amendment in modern Supreme Court jurisprudence is that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In order for Congress to abrogate the states' sovereign immunity as granted by the Eleventh Amendment, Congress must 1) intend to do so unequivocally and 2) act under a valid grant of constitutional authority. *Id.* at 363–64, 121 S.Ct. 955. For the first prong of the abrogation test, the Fourth Circuit quoted the Supreme Court from *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), where the Court announced that in deciding whether a state has waived its constitutional protection under the Eleventh Amendment, the Court will find waiver only where it is stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Faust*, 721 F.2d at 941 (quoting *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347 and *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)).

■ Plaintiff's suit against the South Carolina Department of Transportation is barred by the Eleventh Amendment. The Fourth Circuit has recognized that the South Carolina State Highway Department ("SCSHD") was protected by the Eleventh Amendment and thus was not amenable to suit unless Congress abrogated its rights under existing law. *Faust v. South Carolina State Highway Dep't*, 721 F.2d 934, 936 (4th Cir.1983). The South Carolina Department of Transportation ("SCDOT") replaced the SCSHD for all practical purposes as of 1993. *See* S.C.Code Ann. § 57–3–10 (2002) (the notes following state, "The 1993 amendment established the structure of the Department of Transportation, in place of former provisions establishing the Department of Highways and Public Transportation, pursuant to a restructuring of the Department").

■ Plaintiff in this case brought suit under 42 U.S.C. § 3601 *et seq.*, also known as the Fair Housing Act ("FHA"). The argument plaintiff puts forward to suggest abrogation is that the FHA defines "person" separately from "state" in its definition section and then allows suits against "persons or other entities" in its liability section. *See* 42 U.S.C. §§ 3602, 3610 and Pl.'s Brief 2–4. Plaintiff then traces the statute to find that the federal government can sue to enforce the FHA and recover damages for an aggrieved party. Plaintiff theorizes that by filling in a state for "other entity" and allowing a citizen to sue where the federal government can, Congress "unequivocally granted a right" for an individual citizen to sue a state under the FHA. (Pl.'s Brief 5.) Other district courts have looked at this precise issue and have disagreed with plaintiff. *See Project Life, Inc. v. Glendening*, 139 F.Supp.2d 703, 711 (D.Md.2001) (precluding a recovery of money damages against the Maryland Department of Transportation under the FHA); *Welch v. Century 21 Chimes Real Estate, Inc.*, 1991 WL 29950, 1991 U.S. Dist. LEXIS 2411 (E.D.N.Y. 1991) (holding that the New York Department of State Licensing Division was not a

proper defendant under the FHA because there is no express abrogation of the Eleventh Amendment in the FHA). This type of extrapolation would not be necessary if Congress unequivocally intended to abrogate the states' sovereign immunity, as evinced by Congress's boldness of language in other instances. *See* 42 U.S.C. § 2000d–7(a) (stating "(1) A State shall not be immune under the Eleventh Amendment...from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."); *see also Bd. of Trs. of the Univ. of Alabama,* 531 U.S. at 363–64, 121 S.Ct. 955 (where the Court held that while Congress unquestionably intended to abrogate Eleventh Amendment immunity in 42 U.S.C. § 12202 by stating that "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter," the abrogation was unconstitutional). The Supreme Court has repeatedly expressed its distaste for lower courts "running afoul of the unequivocal-expression requirement" of the Eleventh Amendment. *United States v. Nordic Vill.,* 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *see also, Blatchford v. Native Vill. of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (noting that a general jurisdictional grant does not suffice to show Congress abrogated a state's Eleventh Amendment rights). Plaintiff advances no argument that comes close to the threshold of an unequivocal abrogation; therefore, it is not necessary to reach the second question of whether Congress has acted under a valid grant of constitutional authority.

■ Once it is established that the Eleventh Amendment applies to a state agency and that the federal statute sued under does not abrogate that immunity, the only question left is whether the state agency has waived its Eleventh Amendment immunity. Plaintiff does not argue that the SCDOT has waived its immunity; therefore, the issue of abrogation is the only one before this court.

■ The SCDOT's immunity under the Eleventh Amendment also applies to defendants Wilkes, Dickson, and Rucker in their official capacities. *Huang v. Bd. of Governors of Univ. of North Carolina,* 902 F.2d 1134, 1138 (4th Cir.1990) (noting that "the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities"). The Supreme Court has instructed that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Soc. Serv.,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978)). These suits are thus treated as suits against the State. *Id.* at 166, 105 S.Ct. 3099. Because South Carolina and the SCDOT have not waived their Eleventh Amendment immunity, plaintiff's complaint must also be dismissed as to the individual defendants in their official capacities.[1]

### B. Sovereign Immunity and HUD

■ A determination of the existence of (or waiver of) sovereign immunity is a

---

1. Plaintiff conceded at oral argument that he was only bringing suit against the SCDOT employees in their official capacities.

"jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter." *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 n. 4. (4th Cir.1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). It is beyond contention that HUD is a federal agency and enjoys sovereign immunity unless Congress has explicitly waived it.

### i. Waiver under the FHA

■■■■ Defendant HUD argues that the Fair Housing Act, 42 U.S.C. §§ 3601–3617, contains no explicit waiver of sovereign immunity. It was established long ago that the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Any waiver of this sovereign immunity must be "unequivocally expressed," *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), and further, the Supreme Court has noted "that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). *See also United States v. Kubrick*, 444 U.S. 111, 117–118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Lehman v. Nakshian*, 453 U.S. 156, 160–161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). HUD simply asserts in its motion that nothing in the FHA meets this threshold requirement of an unequivocal expression of abrogation.

Plaintiff argues that the FHA specifically provides for the recovery of monetary damages against the United States by private individuals through civil suits. (Pl.'s Response Brief 2.) Plaintiff bases his argument on 42 U.S.C. § 3613(c)(2) entitled "Relief which may be granted." Section 3613(c)(2) states, "[i]n a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person." Plaintiff asserts that the second sentence in that section is an unequivocal abrogation of the United States' immunity from suit. This court disagrees. Section 3613(c)(2) does not meet the unequivocal expression standard. The Supreme Court disfavors the reading of ambiguous statutory provisions as sufficient to waive sovereign immunity. *See Lane v. Pena*, 518 U.S. 187, 192–200, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). While the Court in *Lane* uses a provision similar to § 3613(c)(2) to give an example of unequivocal expression, it only comes to that conclusion by analyzing the provision with reference to other provisions of express abrogation. In other words, the phrasing in § 3613(c)(2) alone is not enough for abrogation; it may only pass that challenging test in conjunction with other evidence of Congress's intent to abrogate. Furthermore, the Court again cautioned that it will "construe ambiguities in favor of immunity." *Id.* at 192, 116 S.Ct. 2092. Section 3613(c)(2) only relates to attorney's fees and court costs, not liability costs. These fees and costs could be awarded when the United States intervenes as a plaintiff, as the FHA allows, not necessarily implying that the United States could be a defendant. The language is ambiguous at best; therefore, sovereign immunity is still intact for HUD in this context.

## ii. Waiver under the APA

█ Next, HUD argues that there has been no waiver of sovereign immunity under the Administrative Procedures Act ("APA"). HUD explains that plaintiff has not met the elements to sue under the APA, which are 1) be a person adversely affected by a statute or regulation, 2) be the subject of a final agency action, and 3) have no other adequate remedy. 5 U.S.C. § 702 ("Agency action made reviewable by statute *and final agency action* for which there is *no other adequate remedy* in a court are subject to judicial review") (emphasis added). HUD continues that there has been no final agency action and that plaintiff's remedy is to sue the SCDOT. Plaintiff counters that the agency action does not have to be final, and in the alternative, that the agency action is final. These elements are not the immediate issue because § 702 of the APA only deals with parties seeking "relief other than money damages." Plaintiff in the instant action seeks only money damages. The APA has not abrogated HUD's sovereign immunity for the only relief plaintiff seeks in the instant action.

█ Under the case of *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), and for the same reasons recited under Section II A, *supra*, the complaints against the individual HUD defendants must also be dismissed based on sovereign immunity.[2]

## III. CONCLUSION

It is therefore,

**ORDERED**, for the foregoing reasons, that defendants' motion to dismiss is

**GRANTED** and that plaintiff's complaint is **DISMISSED** in its entirety.

**AND IT IS SO ORDERED.**

---

2. Plaintiff conceded at oral argument that the individual HUD employees were also only being sued in their official capacities.