## GREAT NORTHERN LIFE INSURANCE CO. *v.* READ, INSURANCE COMMISSIONER.

No. 235.   Argued January 31, 1944.—Decided April 24, 1944.

*Messrs. Charles R. Holton* and *John A. Johnson,* with whom *Mr. Herbert R. Tews* was on the brief, for petitioner.

*Mr. Fred Hansen,* First Assistant Attorney General of Oklahoma, with whom *Mr. Randell S. Cobb,* Attorney General, was on the brief, for respondent.

*Mr. John H. Miley* filed a brief, as *amicus curiae,* in support of petitioner.

MR. JUSTICE REED delivered the opinion of the Court.

This writ brings here for review the action of petitioner, a foreign insurance company, to recover taxes paid to respondent, the Insurance Commissioner of Oklahoma, which were levied by § 10478, Oklahoma Statutes 1931, as amended by Chapter 1 (a), Title 36, Session Laws of Oklahoma 1941. This was an annual four per cent tax on premiums received by foreign insurance companies in Oklahoma, and it, together with certain specified fees, was in lieu of all other taxes and fees in Oklahoma. Petitioner paid the tax under protest and, alleging diversity of citizenship, 28 U. S. C. § 41, brought suit against the Insurance Commissioner in the District Court of the United States. The procedure for recovery is laid down by § 12665, Oklahoma Statutes 1931.[1]

---

[1] "12665. Payment Under Protest Where Relief by Appeal Not Provided—Action to Recover.

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein; if, upon final determination of any such suit, the court shall determine that the taxes were illegally collected, as not

The percentage of premiums due was increased from two to four per cent by the amendment of 1941, effective April 25th of that year. The District Court refused recovery. The Circuit Court of Appeals affirmed. *Great Northern Life Insurance Co.* v. *Read,* 136 F. 2d 44. Certiorari was granted on petitioner's assertion of error in requiring it to pay a tax allegedly discriminatory under the Fourteenth Amendment as compared with the taxation of domestic insurance companies, and also unconstitutional as levied after the company's admission to the state and on premiums collected during the business year for which a license was already in force. A conflict in principle was suggested with *Hanover Fire Insurance Co.* v. *Harding,* 272 U. S. 494. We granted certiorari, 320 U. S. 726, and asked discussion of the right of petitioner to maintain its suit in a federal court. As we conclude that this suit could not be maintained in the federal court, we do not reach the merits of the issue as to the validity of the tax.

The right of petitioner to maintain this suit in a federal court depends, first, upon whether the action is against an individual or against the State of Oklahoma. Secondly, if the action is determined to be against the state, the question arises as to whether or not the state has consented to suit against itself in the federal court.

Respondent challenged the right of petitioner to seek relief in the District Court by the defense in its answer that the complaint fails to state a claim upon which relief can be granted. R. C. P. 12 (b) and (e).[2] This challenge,

being due the state, county or subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

[2] There is here no want of jurisdiction of the parties or subject matter. We are not passing upon a certification of an issue as to juris-

50

on the ground that the state had not consented to be sued, was sustained by the District Court. The contention is available here to sustain the judgment on appeal. *Le-Tulle* v. *Scofield*, 308 U. S. 415.

In *Smith* v. *Reeves*, 178 U. S. 436, an action was instituted in the federal trial court by railroad receivers against the defendant "as Treasurer of the State of California" to recover taxes assessed against and paid by the railroad. The proceeding was brought under § 3669 of the California Political Code, as amended by California Statutes (1891) 442, which authorized a suit against the State Treasurer for the recovery of taxes which were illegally exacted. The defendant could demand trial of the action in the Superior Court of the County of Sacramento, California. If the final judgment was against the Treasurer, the Comptroller of the state was directed to draw his warrant on state funds for its satisfaction.

As the suit was against a state official as such, through proceedings which were authorized by statute, to compel him to carry out with the state's funds the state's agreement to reimburse moneys illegally exacted under color of the tax power, this Court held, p. 439, it was a suit against the state. The state would be required to pay.[3] The case therefore is plainly distinguishable from those to recover personally from a tax collector money wrongfully exacted by him under color of state law, *Atchison, T. & S. F. Ry. Co.* v. *O'Connor*, 223 U. S. 280; cf. *Matthews* v. *Rodgers*, 284 U. S. 521, 528; to recover under general law possession of specific property likewise wrongfully obtained or held, *Tindal* v. *Wesley*, 167 U. S. 204, 221; *Virginia Coupon*

diction such as arose under the Act of March 3, 1891, § 5, 26 Stat. 827, in *Illinois Central R. Co.* v. *Adams*, 180 U. S. 28, 37. If this is a suit against the state, a failure to show the state's consent to be sued in the face of this answer would be fatal. Cf. *Berryessa Cattle Co.* v. *Sunset Pacific Oil Co.*, 87 F. 2d 972, 974.

[3] *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 10. Compare *Louisiana* v. *Jumel*, 107 U. S. 711, 726.

*Cases,* 114 U. S. 269, 285; *United States* v. *Lee,* 106 U. S. 196; to perform a plain ministerial duty, *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541; *Rolston* v. *Missouri Fund Comm'rs,* 120 U. S. 390, 411; or to enjoin an affirmative act to the injury of plaintiff, *Sterling* v. *Constantin,* 287 U. S. 378, 393; *Tomlinson* v. *Branch,* 15 Wall. 460; *Davis* v. *Gray,* 16 Wall. 203, 220; *In re Tyler,* 149 U. S. 164, 190. Only in *Smith* v. *Reeves* was the action authorized by statute against the officer in his official capacity. In the other instances relief was sought under general law from wrongful acts of officials. In such cases the immunity of the sovereign does not extend to wrongful individual action and the citizen is allowed a remedy against the wrongdoer personally.

This ruling that a state could not be controlled by courts in the performance of its political duties through suits against its officials has been consistently followed. *Chandler* v. *Dix,* 194 U. S. 590; *Fitts* v. *McGhee,* 172 U. S. 516, 529; *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151, 167; *Lankford* v. *Platte Iron Works Co.,* 235 U. S. 461, 468 *et seq.; Ex parte State of New York, No. 1,* 256 U. S. 490, 500; *Worcester County Co.* v. *Riley,* 302 U. S. 292, 296, 299. Efforts to force, through suits against officials, performance of promises by a state collide directly with the necessity that a sovereign must be free from judicial compulsion in the carrying out of its policies within the limits of the Constitution. *Monaco* v. *Mississippi,* 292 U. S. 313, 320; *Louisiana* v. *Jumel,* 107 U. S. 711, 720. A state's freedom from litigation was established as a constitutional right through the Eleventh Amendment. The inherent nature of sovereignty prevents actions against a state by its own citizens without its consent. *Hans* v. *Louisiana,* 134 U. S. 1, 10, 16.

Oklahoma provides for recovery of unlawful exactions paid to its collectors under protest. § 12665 Oklahoma Statutes 1931. Note 1, *supra.* In our view of this case it

is unnecessary for us to pass upon whether this method of protecting taxpayers was intended to be exclusive of all other remedies, including actions against an individual who happened to be a tax collector, or whether if it were so intended it would surmount all constitutional objections. Compare *Burrill* v. *Locomobile Co.*, 258 U. S. 34, and *Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337, 341–43. See also *Antrim Lumber Co.* v. *Sneed*, 175 Okla. 47, 49–51, 52 P. 2d 1040, 1043–45.

A suit against a state official under § 12665 to recover taxes is held to be a suit against the state by Oklahoma and the remedy exclusive of other state remedies. *Antrim Lumber Co.* v. *Sneed*, *supra*, 175 Okla. at 51, 52 P. 2d at 1045. This interpretation of an Oklahoma statute by the Supreme Court of the state accords with our view, as set out above, of the meaning of a suit against a state. Petitioner brought this action against the collector, the Insurance Commissioner, in strict accord with the requirements of § 12665. It alleged that there was no appeal provided by Oklahoma laws from defendant's action in collecting and gave notice of protest and suit to defendant at the time of payment in the language of the section. By so doing petitioner was relieved of the necessity of establishing that the payment was not voluntary [4] and obtained the advantage of a statutory lien *lis pendens* on the tax payment.

By § 12665, Oklahoma creates a judicial procedure for the prompt recovery by the citizen of money wrongfully collected as taxes. It is the sovereign's method of tax administration. Oklahoma designates the official to be sued, orders him to hold the tax, empowers its courts to

---

[4] *Board of Commissioners* v. *Ward*, 68 Okla. 287, 288, 173 P. 1050; *Broadwell* v. *Board of Commissioners*, 71 Okla. 162, 163, 175 P. 828; cf. *Ward* v. *Love County*, 253 U. S. 17, 22; *Broadwell* v. *Carter County*, 253 U. S. 25; *Carpenter* v. *Shaw*, 280 U. S. 363, 369; *Railroad Co.* v. *Commissioners*, 98 U. S. 541, 544; *Stratton* v. *St. Louis S. W. Ry. Co.*, 284 U. S. 530, 532.

do complete justice by determining the amount properly due and directs its collector to pay back any excess received to the taxpayer. The state provides this procedure in lieu of the common law right to claim reimbursement from the collector. The issue of coercion and duress was eliminated at the pre-trial conference without objection by the petitioner. The section makes sure the taxpayer's recovery of illegal payments. The section is like the California statute involved in *Smith* v. *Reeves, supra,* except for the immaterial difference that the money collected is directed to be held separate and apart by the collector instead of being held in the general funds of the State Treasurer. See § 3669, California Political Code, as amended by California Statutes (1891) 442. In the *Reeves* case, as here, the suit was against the official, not the individual. The Oklahoma section differs from the Colorado law, § 6, Chapter 211, Session Laws of Colorado 1907, considered in *Atchison, T. & S. F. Ry. Co.* v. *O'Connor, supra,* in that the Colorado statute left the taxpayer to his remedy against the collector and merely directed the refund of the tax by the Treasurer in accordance with any judgment or decree which might be obtained. In the *O'Connor* case, in accordance with the statute, the suit, as this Court's opinion shows, was against the individual, not the official. We are of the view that the present proceeding under § 12665 is like *Smith* v. *Reeves,* a suit against the state.

But it is urged that if this is a suit against the state, Oklahoma has consented to this action in the federal court. Cf. *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 391.

The principle of immunity from litigation assures the states and the nation from unanticipated intervention in the processes of government, while its rigors are mitigated by a sense of justice which has continually expanded by consent the suability of the sovereign. The history of

sovereign immunity and the practical necessity of unfettered freedom for government from crippling interferences require a restriction of suability to the terms of the consent, as to persons, courts and procedures. *Antrim Lumber Co.* v. *Sneed,* 175 Okla. 47, 52 P. 2d 1040; *Patterson* v. *City of Checotah,* 187 Okla. 587, 103 P. 2d 97; *Beers* v. *Arkansas,* 20 How. 527.; *Kawananakoa* v. *Polyblank,* 205 U. S. 349; *Minnesota* v. *United States,* 305 U. S. 382, 388; *United States* v. *U. S. Fidelity & Guaranty Co.,* 309 U. S. 506, 512.[5] The immunity may, of course, be waived. *Clark* v. *Barnard,* 108 U. S. 436, 447. When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the federal courts to be astute to read the consent to embrace federal as well as state courts. Federal courts, sitting within states, are for many purposes courts of that state, *Madisonville Traction Co.* v. *Mining Co.,* 196 U. S. 239, 255, but when we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.[6]

The Oklahoma section in question, 12665, was enacted in 1915 as a part of a general amendment to then existing tax laws. Session Laws 1915, p. 149, Chap. 107, Art. One, subdivision B, § 7.[7] This subdivision of the act of 1915 is

[5] *Keifer & Keifer* v. *R. F. C.,* 306 U. S. 381, is not to the contrary. When authority to sue is given, that authority is liberally construed to accomplish its purpose. *United States* v. *Shaw,* 309 U. S. 495, 501.

[6] Cf. *Matthews* v. *Rodgers,* 284 U. S. 521, 525. The Federal Government's consent to suit against itself, without more, in a field of federal power does not authorize a suit in a state court. *Stanley* v. *Schwalby,* 162 U. S. 255, 270; *Minnesota* v. *United States,* 305 U. S. 382, 384, 389.

[7] See also Session Laws 1913, Ch. 240, Art. 1, § 7.

concerned with administrative review of boards of equalization and provides a complete procedure including review by the district and Supreme Court of Oklahoma, as the case may be, which are given authority to affirm, modify or annul the action of the boards. §§ 2 and 3. Section 6 requires the payment of the taxes which fall due, pending administrative review, and provides for recovery of such taxes in accordance with the ultimate finding on review in language practically identical with that of § 7 (§ 12665) here involved. Furthermore, § 12665 gives directions to the Oklahoma officer as to his obligations, requires the court to give precedence to these cases and directs the kind of judgment to be returned, see note 1, *supra,* which is quite different in language, if not in effect, from the judgment a federal court would render. It is clear to us that the legislature of Oklahoma was consenting to suit in its own courts only. *Chandler* v. *Dix,* 194 U. S. 590.

*Smith* v. *Reeves, supra,* p. 445, holds that an act of a state is valid which limits to its own courts suits against it to recover taxes. There California's intention to so limit was made manifest by authorizing the state officer to demand trial in the Superior Court of Sacramento County. *Atchison, T. & S. F. Ry. Co.* v. *O'Connor,* considered above at p. 53, is not applicable since it was not a suit against the state.

Petitioner urges that *Smyth* v. *Ames,* 169 U. S. 466, 517, and *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 391, 392, are precedents which lead to a contrary conclusion on this issue of the suability of Oklahoma in the District Court of the United States. The former is clearly inapposite. That case involved proceedings to enjoin enforcement of an allegedly unconstitutional state statute providing for intrastate railroad rates. Since the state act provided a remedy, the state took the position

that federal equity jurisdiction was ousted. This Court held the federal equity jurisdiction continued to restrain unconstitutional acts by state officers which threatened irreparable damage. pp. 474, 477, 515–19.

In the *Reagan* case, a proceeding for injunction to restrain the members of the Texas Railroad Commission from enforcing rates which were alleged to be unconstitutional was allowed to be maintained in equity in a federal court. This Court said it was maintainable against the defendants both under the general equity jurisdiction of the federal courts and under the provisions of the state statute which allowed review "in a court of competent jurisdiction in Travis County, Texas. . . ." It was thought that the United States Circuit Court, sitting in Travis County, was covered by this language. As it was concluded, however, that this was not a suit against the state, page 392, we do not feel impelled to extend the ruling of the *Reagan* case on this alternative basis of jurisdiction to a suit, such as this, against a state for recovery of taxes.

*Gunter* v. *Atlantic Coast Line,* 200 U. S. 273, is also distinguishable. There the Attorney General of South Carolina appeared in a federal court to answer for the state in an injunction suit under the authority of a statute which read as follows:

"if the State be interested in the revenue in said action, the county auditor shall, immediately upon the commencement of said action, inform the Auditor of State of its commencement, of the alleged cause thereof, and the Auditor of State shall submit the same to the Attorney General, who shall defend said action for and on behalf of the State." p. 286.

This Court construed this to consent to an appearance in the federal court and held its decision res judicata against the state and added at p. 287:

"If there were doubt—which we think there is not—as to the construction which we give to the act of 1868, that doubt is entirely dispelled by a consideration of the contemporaneous interpretation given to the act by the officials charged with its execution, by the view which this court took as to the real party in interest on the record in the Pegues case, and by the action as well as non-action which followed the decision of that case by the state government in all its departments through a long period of years."

The administrative construction by a state of these statutes of consent have influence in determining our conclusions. Cf. *Farish* v. *State Banking Board*, 235 U. S. 498, 512; *Richardson* v. *Fajardo Sugar Co.*, 241 U. S. 44, 47; *Missouri* v. *Fiske*, 290 U. S. 18, 24.

It may be well to add that the construction given the Oklahoma statute leaves open the road to review in this Court on constitutional grounds after the issues have been passed upon by the state courts. *Chandler* v. *Dix*, 194 U. S. 590, 592; *Smith* v. *Reeves*, 178 U. S. 436, 445.

The judgment of the Circuit Court of Appeals is vacated and the cause is remanded to the District Court with directions to dismiss the complaint for want of jurisdiction.

MR. JUSTICE FRANKFURTER, with whom the CHIEF JUSTICE and MR. JUSTICE ROBERTS concur, dissenting:

To avoid the imposition of penalties and other serious hazards, the plaintiff paid money under claim of a tax which Oklahoma, we must assume, had no power to exact. Concededly, he could sue to recover the moneys so paid to the defendant, a tax collector, in a state court in Oklahoma. But to allow the suit to be brought in a federal court sitting in Oklahoma would derogate, this Court now holds, from the sovereignty of Oklahoma. Such a result, I believe, derives from an excessive regard for formalism

and from a disregard of the whole trend of legislation, adjudication and legal thought in subjecting the collective responsibility of society to those rules of law which govern as between man and man.

To repeat, this is a simple suit to get back money from a collector who for present purposes had no right to demand it. So far as the federal fiscal system is concerned, this common law remedy has been enforced throughout our history, barring only a brief interruption.[1] See *United States* v. *Nunnally Investment Co.*, 316 U. S. 258. And if, instead of avoiding the serious consequences of not paying this state tax, the plaintiff had resisted payment and sought an injunction against the tax collector for seeking to enforce the unconstitutional tax, under appropriate circumstances the federal courts would not have been without jurisdiction. See, *e. g.*, *Western Union Telegraph Co.* v. *Trapp*, 186 F. 114; *Ward* v. *Love County*, 253 U. S. 17; *Carpenter* v. *Shaw*, 280 U. S. 363. Finally, as I read the opinion of the Court, even a suit of this very nature for the recovery of money paid for a disputed tax will lie against the collector in what is called his individual capacity; that is, a suit against the same person on the same cause of action for the same remedy can be brought, if only differently entitled. In view of the history of such a suit as this and of the incongruous consequences of dis-

---

[1] The Swartwout scandal led to the Act of March 3, 1839 (§ 2, 5 Stat. 339, 348), which this Court construed as a withdrawal of the suability of the collector. *Cary* v. *Curtis*, 3 How. 236. That decision was rendered on January 21, 1845, and Congress promptly restored the old liability. Act of Feb. 26, 1845, c. XXII, 5 Stat. 727. See Brown, *A Dissenting Opinion of Mr. Justice Story* (1940) 26 Va. L. Rev. 759. Again, in view of the complicated administrative problems raised by the invalidation of the Agricultural Adjustment Act, Congress devised a special scheme for the recovery of the illegal exactions made under the Act. 49 Stat. 1747, 7 U. S. C. § 644 *et seq.*; *Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337.

allowing it in the form in which it was a case in the federal court in Oklahoma, the claims of sovereignty which are sought to be respected must surely be attenuated and capricious.

The Eleventh Amendment has put state immunity from suit into the Constitution. Therefore, it is not in the power of individuals to bring any State into court—the State's or that of the United States—except with its consent. But consent does not depend on some ritualistic formula. Nor are any words needed to indicate submission to the law of the land. The readiness or reluctance with which courts find such consent has naturally been influenced by prevailing views regarding the moral sanction to be attributed to a State's freedom from suability. Whether this immunity is an absolute survival of the monarchial privilege, or is a manifestation merely of power, or rests on abstract logical grounds, see *Kawananakoa* v. *Polyblank*, 205 U. S. 349, it undoubtedly runs counter to modern democratic notions of the moral responsibility of the State. Accordingly, courts reflect a strong legislative momentum in their tendency to extend the legal responsibility of Government and to confirm Maitland's belief, expressed nearly fifty years ago, that "it is a wholesome sight to see 'the Crown' sued and answering for its torts." 3 Maitland, Collected Papers, 263.[2]

Assuming that the proceeding in this case to recover from the individual moneys demanded by him in defiance of the Constitution is a suit against the State, compare *Ex parte Young,* 209 U. S. 123, 155; *Atchison, T. & S. F.*

---

[2] "With us every official, from the Prime Minister down to a constable or a collector of taxes, is under the same responsibility for every act done without legal justification as any other citizen." Doubtless this statement of Dicey's, *Law of the Constitution,* 8th ed., at p. 189, 9th ed. at p. 193, was an idealization of actuality. But in the perspective of our time its validity as an ideal has gained and not lost.

*Ry. Co.* v. *O'Connor,* 223 U. S. 280, Oklahoma has consented that he be sued. The only question therefore is as to the scope of the consent. Has she confined the right to sue to her own courts and excluded the federal courts within her boundaries? She has not said so. Is such restriction indicated by practical considerations in the administration of state affairs? If it makes any difference to Oklahoma whether this suit against a tax collector is pressed in an Oklahoma state court rather than in a federal court sitting in Oklahoma, the difference has not been revealed. There is here an entire absence of the considerations that led to the decision in *Burford* v. *Sun Oil Co.,* 319 U. S. 315. There it was deemed desirable, as a matter of discretion, that a federal equity court should step aside and leave a specialized system of state administration to function. Here the suit in a federal court would not supplant a specially adaptable state scheme of administration nor bring into play the expert knowledge of a state court regarding local conditions. The subject matter and the course of the litigation in the federal court would be precisely the same as in the state court. The case would merely be argued in a different building and before a different judge. Language restrictive of suit in a federal court is lacking, and intrinsic policy does not suggest restrictive interpretation to withdraw from a federal court questions of federal constitutional law.

Legislation giving consent to sue is not to be treated in the spirit in which seventeenth century criminal pleading was construed. Only by such overstrained rendering of the Oklahoma statute does the Court finally achieve exclusion of the right of the plaintiff to go to a federal court. To the language of that statute I now turn. By § 12665 Oklahoma Statutes, 1931, the State authorized an action to recover moneys illegally exacted as a tax, in a situation like the present, where the exaction is one "from which the laws provide no appeal." The relevant juris-

dictional provision is as follows: "All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein. . . ." The part that the federal courts play in the grant of such jurisdiction by the States is not a new problem. With his customary hard-headedness Chief Justice Waite, for this Court, stated the guiding consideration in ascertaining the relation of the federal court within a State to the judicial process recognized by that State: "While the Circuit Court may not be technically a court of the Commonwealth, it is a court within it; and that, as we think, is all the legislature intended to provide for." *Ex parte Schollenberger*, 96 U. S. 369, 377. This conception of a federal court as a court within the State of its location has ever since dominated our decisions. See, *e. g., Madisonville Traction Co.* v. *Mining Co.*, 196 U. S. 239, 255–56; *Neirbo Co.* v. *Bethlehem Corp.*, 308 U. S. 165, 171. It is a conception which has been acted upon by state legislatures. For jurisdictional purposes federal courts have been assimilated to the courts of the States in which they may sit. When we are dealing with jurisdictional matters legislation should be interpreted in the light of such professional history. Even if an ambiguity could be squeezed out of a grant of jurisdiction which applies so aptly to a federal court in Oklahoma as to an Oklahoma state court—"suits shall be brought in the court having jurisdiction thereof"—neither logic nor history nor reason counsels an interpretation that attributes to the State hostility against a suit in a federal court on an exclusively federal right as to which the last say in any event belongs to a federal court.[3]

---

[3] Of course the State can at any time withdraw its consent to be sued. See *Beers* v. *Arkansas*, 20 How. 527. But statutes have steadily enlarged the range of a State's suability and rarely has there been a recession. See, generally, Borchard, *State and Municipal Liability in Tort—Proposed Statutory Reform* (1934) 20 A. B. A. J. 747; Borchard, *Governmental Responsibility in Tort* (1926) 36 Yale L. J. 1, 17, (1927) 36 Yale L. J. 757, 1039, (1928) 28 Col. L. Rev. 577, 735.

In the past, even when the jurisdictional grant has been couched in language giving substantial ground for the argument of restriction of jurisdiction to the state court, this Court has not found denial by a State of the right to go to a federal court within that State when it in fact opened the door of its own courts. Thus, in *Madisonville Traction Co.* v. *Mining Co., supra,* a Kentucky statute required, among other things, appointment of commissioners in a condemnation proceeding by the county court, examination of the report at its first regular term, issuance of orders in conformity with the Kentucky Civil Code of Practice and allowance of appeals from the county courts. And yet this Court held, as a matter of construction, that it was "not to be implied from the statute in question that the State intended to exclude . . . the federal courts." 196 U. S. at 256. The section now under consideration is only one of several statutory provisions for challenging like tax assessments in courts. In all the other provisions, the jurisdiction is explicitly given only to state courts. See, *e. g.,* §§ 12651, 12660, 12661. If in § 12665 Oklahoma has seen fit to allow suits to be brought "in the court having jurisdiction thereof," which as a matter of federal jurisdictional law certainly includes the federal court in Oklahoma, and has not seen fit to designate the state courts for such jurisdiction, why should this Court interpolate a restriction which the Oklahoma Legislature has omitted? The fact that the Legislature has also provided that such suits "shall have precedence" is no more embarrassment to federal jurisdiction than to state jurisdiction. That is merely an admonition to courts of the importance of disposing of litigation affecting revenue with all convenient dispatch. Nor is there any other provision of the statute giving this right of action that remotely requires a procedure to be followed or relief to be given peculiar to state courts or different from established procedure and relief in the fed-

eral courts. Only on the assumption that federal courts are alien courts is there anything in § 12665 that is not as suited to a proceeding in a federal court as it is to one in a state court.

The situation thus presented by the Oklahoma legislation is very different from that which was here in *Chandler v. Dix,* 194 U. S. 590. There a suit was brought against state officials to remove a cloud on title to lands claimed by the State. The relief that was sought and the procedure for pursuing it plainly indicated "that the legislature had in mind only proceedings in the courts of the State. A copy of the complaint is to be served upon the prosecuting attorney, who is to send a copy thereof within five days to the Auditor General, and this is to be in lieu of service of process. It then is left to the discretion of the Auditor General to cause the Attorney General to represent him, and it is provided that in such suits no costs shall be taxed. These provisions with regard to procedure and costs show that the statute is dealing with a matter supposed to remain under state control. . . . [The] statute does not warrant the beginning of a suit in the federal court to set aside the title of the State." 194 U. S. at 591–592. The marked difference between the Michigan statute and this Oklahoma statute is further evidenced by the fact that § 12665 gives an action to recover not merely illegal state taxes but also taxes of the "county or sub-division of the county" that have been illegally collected. But counties or their subdivisions do not enjoy immunity from suit. *Lincoln County v. Luning,* 133 U. S. 529; *Seattle v. Oregon & Washington R. Co.,* 255 U. S. 56, 71. If the other jurisdictional requirements are present, they can be sued in a federal court without the leave of Oklahoma. It is not, I submit, a rational way to construe the Oklahoma statute, dealing with a particular type of illegal exaction raising the same kind of issue and involving the same procedure,

so as to recognize jurisdiction of federal courts over suits against the county and its sub-division but to find a purpose to exclude suits as to illegal state exactions.

I have proceeded on the assumption that the action below was under § 12665, and as such an action against the State. But the suit was not brought under § 12665. It was brought as an ordinary common law action for the recovery of money against an officer acting under an unconstitutional statute. The defendant answered the suit, but did not claim the State's immunity from suit and the court's resulting lack of jurisdiction. What is even more significant is that he did allege lack of jurisdiction on another ground not now relevant. In a word, the defendant did not claim, on behalf of the State, the immunity which this Court now affords him. He did not even make this claim at the pre-trial conference and the claim did not emerge as one of the issues defined by the pre-trial conference under Rule 16. In disposing of the case, the Judge interpreted the action as having been brought under § 12665, although the pleadings gave no warrant for such conclusion, and on such interpretation, he found that the defendant could claim and had not waived Oklahoma's immunity. Evidently, however, the District Court was not content with its own finding of want of "jurisdiction" for it proceeded to dispose of the constitutional issues on their merits. I think that the claim of the State's immunity was not in the case under *Illinois Central R. Co.* v. *Adams,* 180 U. S. 28, which held that in a suit nominally against an individual sovereign immunity is a defense that must be raised by appropriate pleading. Doubtless for this reason, the jurisdictional question on which the case is now made to turn was not even discussed by the Circuit Court of Appeals.

That court, I believe, properly passed on the constitutional merits, but since the case here goes off on jurisdiction, I intimate no views upon them.