502 F.2d 1051
 William Harrison RICHINS and Amelda S. Richins, his wife,
Plaintiffs-Appellees,
v.
INDUSTRIAL CONSTRUCTION, INC., a corporation, Defendant-Appellant.
INDUSTRIAL CONSTRUCTION, INC., a corporation, Third-Party Plaintiff,
v.
STATE ROAD COMMISSION OF UTAH, Third-Party Defendant and Appellant.
 Nos. 73-1957, 73-1958.
 United States Court of Appeals, Tenth Circuit.
 Argued July 11, 1974.
Decided Sept. 3, 1974.
 
 Robert F. Orton of Nielsen, Conder, Hansen & Henriod, Salt Lake City, Utah, for plaintiffs-appellees.
 John G. Marshall, Salt Lake City, Utah, for defendant-appellant.
 Leland D. Ford, Asst. Atty. Gen. (Vernon B. Romney, Atty. Gen., on the brief), for third-party defendant and appellant.
 Before LEWIS, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The primary issue before us on this appeal is whether the defendant-appellant road contractor converted a diesel powered water pump, the property of the plaintiffs-appellees, during the course of building a highway for the State Road Commission of Utah. A segment of the highway crossed the plaintiffs-appellees' land.
 
 
 2
 Assuming the District Court correctly decided in favor of plaintiffs-appellees, was the defendant-appellant contractor entitled to maintain an action over against the State of Utah to obtain indemnity for the conversion liability imposed?
 
 
 3
 A secondary issue in the case is whether plaintiffs-appellees were entitled to recover damages from defendant-appellant contractor for crop loss caused by interference with irrigation facilities incident to the building of the mentioned highway and, assuming that plaintiffs-appellees were entitled to this recovery, whether defendant-appellant was entitled to be indemnified for this amount also.
 
 
 4
 This problem had its inception with the Utah State Road Commission's filing of eminent domain proceedings on November 21, 1967, seeking to acquire 21 acres of irrigated land for the purpose of constructing and maintaining a portion of Interstate Highway 80 North. Pursuant to this, on December 18, 1968, an order of immediate occupancy was entered by the Utah State District Court.
 
 
 5
 The defendant-appellant contractor had on October 24, 1968, entered into a written contract with Utah in which it agreed to act as general contractor to construct the mentioned highway through plaintiffs' property and other lands.
 
 
 6
 During October 1968, the contractor, in building the road, removed certain irrigation ditches which had served not only the property taken but also the adjacent property of plaintiffs-appellees. These facilities were not restored until the summer of 1970, and as a consequence the crops could not be irrigated on some 42 acres.
 
 
 7
 The irrigation pump was located on land which was being acquired by the state. At the time here in question, this pump was on the bank of the Weber River. The contractor took possession of the pump and removed it to its property in Grantsville, Utah and later to its yard in Fillmore, Utah. Plaintiffs were advised that they could remove the pump from the contractor's property if they were willing to pay the sum of $8,000 which, according to the contractor, equaled the expense of removal and transportation.
 
 
 8
 The evidence showed that both the plaintiffs and the defendant pursued their activities on the assumption that the State of Utah would condemn the pump as a fixture. As it turned out, however, this claim and plaintiffs' claim for crop loss were excluded from the state condemnation award. Inasmuch as plaintiffs had not been compensated for the pump and the crops, the present action was filed.
 
 
 9
 The District Court awarded judgment to the plaintiffs in the amount of $10,000 based on its finding that there had been a conversion of the water pump. The trial court found that the defendant company, by taking possession of and retaining the pump, had been guilty of a conversion. The court reasoned that defendant knew that this was not abandoned property since the plaintiffs had claimed compensation for it in the eminent domain action. The court rejected the contractor's arguments that the pump had been abandoned and that the contractor was justified, therefore, in removing it to his land. It finally held that the contractor had exercised dominion over the pump by taking possession of it, by removing it to its own land, by taking it to Fillmore, Utah which was some distance away and finally by demanding that the plaintiffs-appellees pay $8,000 in order to secure its return. This sum was represented to be the expenses incurred by the contractor in moving the equipment.
 
 
 10
 The contractor maintains that Richins had abandoned the pump and that he neglected to demand that it be delivered to him. Had he done so, the contractor would have consented to deliver it to him.
 
 
 11
 The decision of the Utah Supreme Court in Allred v. Hinkley, 8 Utah 2d 73, 328 P.2d 726 (1958), is cited for the proposition that the elements of a conversion are not here established. In Allred an agent was engaged in purchasing seed for the defendant. The agent customarily paid for the seed with his own check and then forwarded a draft to the company payable to himself. The agent, however, changed the procedure, whereby he would pay the grower after the draft was accepted by his principal. In the case litigated he had failed to remit the sums realized from the drafts to the growers. Thereupon a conversion suit was brought against the company by the growers. The Utah court set forth the elements of a conversion action saying that:
 
 
 12
 A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession. The measure of damages of conversion is the full value of the property. It requires such a serious interference with the owner's right that the person interfering therewith may reasonably be required to buy the goods. Although conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.
 
 
 13
 * * * bu
 
 
 14
 328 P.2d at 728.
 
 
 15
 The court concluded that, by taking possession of the seed, the company committed a conversion against the grower in that it interfered without legal justification with the latter's right to possess. The fact that the company did not act knowingly and with intent to invade the rights of the grower was considered inconsequential since there was intent to assume dominion over the property. We fail to see that this decision supports the contractor's position. The indications from the opinion are that Utah follows orthodox criteria in applying the doctrine of conversion.
 
 
 16
 In the case at bar the facts are, to be sure, complex and somewhat ambivalent. Thus, the conduct of plaintiffs up until the time of the removal of the pump might well have furnished a complete defense to the charge of conversion because it showed a willingness to allow the pump to remain on the land in the hope that there could be some manner of forced sale to Utah. However, there is more to the case than the conduct which occurred at the scene. The contractor removed the pump and did so with knowledge of plaintiffs' property claim in it and, finally, the pump was removed to a distant place. The distance itself may constitute a conversion. See Prosser on Torts (3rd ed.), p. 87. The author states that an unauthorized change of location may amount to a conversion. For example, if a person taking possession of property removes it to a distant location and fails to notify the owner, thereby putting the owner to unnecessary inconvenience and expense, there is a conversion.
 
 
 17
 In addition to the removal of the pump, the contractor here demanded the sum of $8,000 as a prerequisite to the return of the property and this also constitutes an exercise of dominion over it.
 
 
 18
 Defendant also argues that there was an abandonment or an estoppel. In support of the abandonment theory the case of Utah Road Commission v. Hansen, 14 Utah 2d 305, 383 P.2d 917 (1963) is cited. The holding in that case was that one whose land is condemned must bear the burden and expense of removing his property from the land and cannot charge it to the State of Utah. The Supreme Court held that if the plaintiff wished to assert ownership of salvage automobiles and a quantity of parts, it must bear the cost of removing such property. The problem here is not a simple contest between the landowner and the state as to the cost of removal. There is evidence establishing that the contractor actually assumed possession and exercised dominion over the property. Apparently the contractor did this in the hope that it would acquire ownership as salvage if and when the plaintiffs obtained an award in the state court proceedings. But this fact does not mitigate the conversion or furnish a basis for application of the doctrine of abandonment or estoppel.
 
 
 19
 In summary, we must conclude that the trial court's holding that defendant-appellant contractor converted the pump was not erroneous.
 
 
 20
 A final contention of the contractor is that the award of $10,000 was excessive. It is true that plaintiffs' expert stated that the pump together with the engine was worth approximately $6,000. The only evidence in support of the judgment was that of the plaintiffs to the effect that the reasonable market value was $10,000 or $11,000. The amount awarded does seem on the high side. However, since there is some evidence to support this (the owner's opinion), and since the award does not greatly exceed either the opinion of the expert or the demand of $8,000 which was made by the contractor, we are not inclined to order a remittitur.
 
 
 21
 We have examined the other contentions raised with respect to the interference with the plaintiffs' irrigation ditches and facilities and the resultant crop damage. We find no merit in the arguments advanced either by the contractor or by the State of Utah.
 
 
 22
 The final matter presented is the contention of the State Road Commission of Utah representing the State of Utah that the Eleventh Amendment to the Constitution of the United States precludes an indemnity action against it by the defendant-third-party plaintiff. The language of the Eleventh Amendment is plain. It provides:
 
 
 23
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 24
 The State of Utah has enacted a statute in which it consents to a limited degree to being sued. See 7A Utah Code Annotated 63-30-1 et seq (1953). The title of 63-30-16 is Jurisdiction of district courts over actions-- Application of Rules of Civil Procedure. It provides:
 
 
 25
 The district courts shall have exclusive original jurisdiction over any action brought under this act and such actions shall be governed by the Utah Rules of Civil Procedure in so far as they are consistent with this act.
 
 
 26
 The cases hold that a state's consent to be sued in the state's own courts does not serve to waive its Eleventh Amendment immunity. Kennecott Copper Corp. v. State Tax Comm., 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).
 
 
 27
 The Utah statute goes beyond mere consent to be sued in its own courts in that it expressly declares that its own courts are the exclusive tribunals for suits against it. This is a positive expression of policy against suits against Utah in United States courts.
 
 
 28
 Can the Eleventh Amendment be waived by the attorney general of the state entering an appearance and litigating in the case in the face of the mentioned statutory language? We are of the opinion that it cannot be so waived. Some discretion in finding an implied waiver is suggested by the Supreme Court in Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The decision, however, of our court in Williams v. Eaton, 443 F.2d 422 (10th Cir. 1971), shows a preference for an approach giving full effect to the Eleventh Amendment absent some extraordinarily effective waiver. Neither decision would justify a finding of waiver here.
 
 
 29
 In view of the language of this statute, and the seeming reluctance of most decisions to imply a waiver, we must conclude that Utah has not effectively waived the Eleventh Amendment at bar. See also MacDonald v. Board of Regents, 371 F.2d 818 (6th Cir. 1967). Therefore, the judgment rendered against the State Road Commission of Utah and thus against the State of Utah in the amount of $10,000 in favor of the defendant-third-party plaintiff on account of the conversion of the water pump, and the judgment entered against it indemnifying the defendant-third-party plaintiff for the plaintiff's judgment for damaged irrigation ditches and resultant crop damage cannot stand.
 
 
 30
 We also feel constrained to add that there is no waiver arising from the fact that this issue has been raised by the State of Utah for the first time on appeal since it has been held to be an available question at the appeal stage. See Ford Motor Co. v. Department of Treasury of Indiana, supra.
 
 
 31
 In view of our ruling as to the applicability of the Eleventh Amendment as a bar to liability of the Utah State Road Commission, we need not consider the merits of the third-party indemnity action arising from the conversion of the pump. Nor do we need to consider the action seeking indemnity for irrigation ditches and crop damages.
 
 
 32
 The judgment of the district court is affirmed in part and reversed in part. It is remanded with directions to the District Court to enter judgments in accordance with the rulings contained herein.