**W. Creekmore WALLACE, II,
Plaintiff-Appellant,**

v.

**STATE OF OKLAHOMA,
Defendant-Appellee.**

No. 80–1913.

United States Court of Appeals,
Tenth Circuit.

Nov. 14, 1983.

C. Rabon Martin of Martin & Silva, Tulsa, Okl., for plaintiff-appellant.

John Paul Johnson, Asst. Atty. Gen., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen. of Okl., Oklahoma City, Okl., was also on brief), for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff, W. Creekmore Wallace, II, filed this suit alleging that defendant, the State of Oklahoma, has acted unconstitutionally in denying him attorneys' fees. The district court dismissed because it lacked subject matter jurisdiction and because the Eleventh Amendment barred the action, and plaintiff appeals. We affirm on the ground that the Eleventh Amendment bars the action.

I

*The factual background*

The facts as stated in the district court's order of dismissal are as follows.[1] Plaintiff

---

1. In their briefs, the parties refer to other facts concerning the attorneys' fees controversy.

Because these facts are not part of the record on appeal, we confine ourselves to those facts

is an attorney practicing in the State of Oklahoma. In 1974, the District Court of Creek County, Oklahoma, appointed plaintiff to represent an indigent criminal defendant in a murder trial. After his client was convicted, plaintiff was appointed to prosecute the appeal. At the conclusion of the appeal, plaintiff was awarded $8,500 in attorneys' fees and costs to be paid out of the Creek County court fund.[2] Plaintiff experienced several delays in obtaining this money due to an insufficient balance in the fund.

Although plaintiff did not file an application for attorneys' fees, the Oklahoma Supreme Court in September 1977 entered an order approving a fee of $250, plus reimbursement of $600 in costs. This order was directly in conflict with the journal entry in the Creek County case granting $8,500 in fees and expenses.

In January 1978, plaintiff served demand on the members of the Creek County Fund Board for payment of the $8,500 claim submitted pursuant to the journal entry of judgment. When the claim had not been paid by February 1978, plaintiff filed an original action in the Oklahoma Supreme Court seeking a writ of mandamus to compel the Creek County Board members to pay the claim. Plaintiff employed counsel to pursue this matter.

In July 1979, the Oklahoma Supreme Court, "in its administrative capacity," held that plaintiff was entitled to the requested fees and expenses. The order indicated that once the Creek County Board paid the claim, the mandamus proceeding would be dismissed as moot. When the claim was not

paid by August 1979, plaintiff requested that the Oklahoma Supreme Court issue the writ of mandamus. A corrected order was entered in which the Chief Justice authorized the Board to exceed its budget in order to pay the claim. After the $8,500 claim was paid, plaintiff then filed a motion to tax costs, comprising $3,000 in attorneys' fees and court costs, incurred in the mandamus proceeding. In September 1979, the Oklahoma Supreme Court denied the motion to tax costs and the request for issuance of the writ of mandamus.

On February 12, 1980, plaintiff filed the instant complaint, challenging the rulings by the Oklahoma Supreme Court and seeking recovery on the further $3,000 claim on two grounds. First, he argued that the Oklahoma Supreme Court's September 1977 order, approving a $250 fee and $600 in costs in prosecuting his client's appeal, despite the $8,500 figure set by the Creek County district court, denied him due process because it was made without notice or hearing. Second, he contended that the order of September 1979 denying him $3,000 in attorneys' fees and costs in seeking the writ of mandamus, in addition to the $8,500 which he was awarded, denied him equal protection by depriving him of proper recovery under Oklahoma law. Okla.Stat.Ann. tit. 12, § 936 (West 1982 Supp.).[3] Plaintiff sought judgment against the State of Oklahoma for $3,000 in fees and costs in maintaining the state mandamus proceeding and legal fees for prosecuting the federal action.

The district court sustained a motion to dismiss filed by defendant on grounds we

found by the district court as reflected in the order dismissing the action, which are not in dispute.

**2.** The appeal resulted in the setting aside of the death sentence imposed. *See Bias v. State,* 561 P.2d 523 (Okl.Cr.1977). The reasonableness of this fee is not in dispute and is not the subject of the instant case.

**3.** Section 936 provides that:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs. Okla.Stat.Ann., tit. 12, § 936 (West 1982 Supp.).

discuss below. Plaintiff then brought this timely appeal.

## II

### *The Eleventh Amendment*

Some discussion of the background of the jurisdictional questions is necessary.

In its order dismissing this action, the district judge first noted that the plaintiff relied on 28 U.S.C. § 1343(3) (1976) for subject matter jurisdiction. The court held, however, that jurisdiction under that statute embracing claims to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution or federal law, was lacking; that for jurisdiction to be proper under § 1343(3), the claim must be one embodied in a statute such as 42 U.S.C. § 1983; and that this requirement was not met because a state is not a person within the meaning of § 1983.

The district court then considered whether jurisdiction of plaintiff's constitutional claims might exist under 28 U.S.C. § 1331(a) (1976). The court concluded that because plaintiff's total prayer would not realistically reach the $10,000 required jurisdictional amount, jurisdiction would be precluded under § 1331(a).

■ In connection with these conclusions we note that since the district court's ruling made in August 1980, the Federal Question Jurisdictional Amendments Act of 1980 [4] became law on December 1, 1980, eliminating the $10,000 amount in controversy requirement for cases brought under § 1331 and restructuring the jurisdictional grant. We agree with the District of Columbia Circuit that the act should be applied retroactively to cases pending on appeal. *See Morris v. Washington Metropolitan Area Transit Authority,* 702 F.2d 1037, 1042–43 n. 12 (D.C.Cir.1983); *Eikenberry v. Callahan,* 653 F.2d 632 (D.C.Cir.1981) (per curiam);

*cf. Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607–08 n. 6, 98 S.Ct. 2002, 2004–05 n. 6, 56 L.Ed.2d 570 (1978).

The district court also held that there was another jurisdictional impediment due to the immunity of the State from suit in federal court under the Eleventh Amendment. I R. 61. We affirm on the ground that the Eleventh Amendment bars the action.

■ The Eleventh Amendment by its terms prohibits suits in federal court against a state by citizens of another state.[5] It long has been interpreted to preclude suits in federal court against a state by citizens of that state as well. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33. L.Ed. 842 (1890); *see also Hefley v. Textron, Inc.,* 713 F.2d 1487, 1493 (10th Cir.1983); *Unified School District No. 480 v. Epperson,* 583 F.2d 1118, 1121 (10th Cir.1978). The Eleventh Amendment thus would appear to bar plaintiff's federal court action against the State of Oklahoma.

Plaintiff argues that the State of Oklahoma has waived its immunity from suit in federal court over the attorneys' fees by "entering into a contract in good faith with [him], under which [he] was retained to … provide counsel for [an indigent criminal defendant]." Brief of Appellant at 10. According to plaintiff, he was entitled to attorneys' fees incurred in enforcing this "contract" in state court under Oklahoma law. Okla.Stat.Ann. tit. 12, § 936 (West Supp.1982). Section 936, in pertinent part, provides that "[i]n any civil action to recover on … [a] contract … for … services, *unless otherwise provided by law* or the contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." *Id.*

---

**4.** Pub.L. No. 96–486, 94 Stat. 2369 (1980).

**5.** The Eleventh Amendment provides that:
The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.
U.S. Const. Amendment XI.

(emphasis added). We must determine whether the State of Oklahoma, by its appointment of plaintiff in the criminal proceeding and the enactment of § 936, has waived its Eleventh Amendment immunity from suit in federal court over the attorneys' fees.

> The Supreme Court has cautioned that: In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."

*Edelman v. Jordan, supra,* 415 U.S. at 673, 94 S.Ct. at 1360 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); *see also Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam); *Korgich v. Regents of New Mexico School of Mines,* 582 F.2d 549, 551–52 (10th Cir. 1978); 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3524, at 79 (1975) ("[A] waiver of immunity or consent to suit will not be implied easily."); *cf. Richins v. Industrial Construction, Inc.,* 502 F.2d 1051, 1055–56 (10th Cir.1974). We find no such express language or overwhelming implication here, and agree with the district court's conclusion that "there is nothing in the record before [us] to indicate that the State of Oklahoma has waived its immunity in this suit." I R. 64.

Assuming, *arguendo,* that a contract existed, within the meaning of § 936 between plaintiff and the State of Oklahoma for the prosecution of the indigent criminal defendant's appeal, it is unclear whether the State of Oklahoma would be liable for attorneys' fees under § 936 in state court. Although the Oklahoma Supreme Court denied plaintiff's motion to tax costs under § 936, the court's order in our record does not state the grounds for the ruling or indicate whether it based the ruling on the State's common law sovereign immunity. I R. 23.

The Oklahoma legislature has not abolished the doctrine of sovereign immunity generally[6] as applied to the State.[7] The legislature, however, has enacted statutes permitting recovery of attorneys' fees against the State in certain limited areas.[8] Moreover, the Oklahoma courts did not hold the State liable for torts committed in the exercise of its proprietary functions until 1980. *Hershel v. University Hospital Foundation,* 610 P.2d 237 (Okl.1980). The Oklahoma Supreme Court recently has held that,

---

**6.** The Oklahoma legislature, however, has abrogated the doctrine of sovereign immunity in certain limited areas. *See e.g.,* Okla.Stat.Ann. tit. 57, § 553 B (West Supp.1982) ("The governmental immunity to tort action of the Department of Corrections of this state shall be waived to the extent of the amount of insurance or bond authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force on effect of such insurance or bond."); Okla.Stat.Ann. tit. 70, § 2115 (West 1972) (state system of higher education authorized to carry liability insurance on its vehicles); *cf. Schrom v. Oklahoma Industrial Development,* 536 P.2d 904 (Okl. 1975) (where state department purchased liability insurance pursuant to legislative authority, state waived sovereign immunity to extent of insurance coverage only); Okla.Stat.Ann. tit. 63, § 683.14 (West 1973) ("Nothing in this Act shall be construed to waive the sovereignty or immunity of the State of Oklahoma, or any political subdivision thereof, from being sued.").

**7.** Section 6 of Article II of the Oklahoma Constitution provides that:

> The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

Okla. Const. Art. II, § 6. The Oklahoma Supreme Court has long held that the doctrine of sovereign immunity is not violative of this constitutional provision. *See, e.g., Neal v. Donahue,* 611 P.2d 1125, 1128–29 (Okl.1980); *Hazlett v. Board of County Commissioners,* 168 Okl. 290, 32 P.2d 940 (1934).

**8.** *See, e.g.,* Okla.Stat.Ann. tit. 12, § 941 (West Supp.1982) (reasonable attorney's fees may be awarded to defendant in proceeding brought by state agency, board, etc., if court determines proceeding is brought without reasonable basis or is frivolous).

beginning on October 1, 1985, the State will be liable for torts, under defined conditions, without regard to the governmental-proprietary distinction; the opinion permitted this change of law as to the judicially created and recognized doctrine of governmental immunity to be effective as to the *Vanderpool* case itself. *Vanderpool v. State of Oklahoma,* 672 P.2d 1153, 1156–57, 54 Okla. B.J. 2069 (Okla. August 6, 1983). Hence, it is unclear whether the State of Oklahoma has even waived its liability in state court for attorneys' fees incurred in enforcing a contract against the State.

Plaintiff argues that when the State enters into a contract in good faith, it waives immunity to the extent of its obligations under that contract. Brief of Appellant at 11. We agree that the Oklahoma Supreme Court has held that the State's immunity is waived to the extent of its contractual obligations where a person has entered into a valid contract with proper state officials and a valid appropriation has been made therefor, and that such contractual obligations may be enforced against the State in an ordinary action at law. *State Board of Public Affairs v. Principal Funding Corp.,* 542 P.2d 503, 506 (Okl.1975). We also note that in *Commercial Communications, Inc. v. State ex rel. Oklahoma Board of Public Affairs,* 613 P.2d 473 (Okl.1980), plaintiff brought suit alleging that the Oklahoma Board of Public Affairs breached its contract by refusing to pay for intercom equipment supplied by plaintiff. The Oklahoma Supreme Court affirmed the State trial judge's order awarding damages to plaintiff, as well as attorneys' fees and costs under § 936. Although the sovereign immunity issue was not discussed, the case indicates that § 936 affords a basis for an award of fees in the Oklahoma courts against the State on the types of contractual obligations specified in the statute.

Nevertheless, even assuming this to be so, the Eleventh Amendment remains as a barrier to plaintiff's suit in the federal courts. The Supreme Court has held that a general statute conferring on a state agency the status of a "body corporate" and the capacity to sue and be sued does not waive the Eleventh Amendment immunity from suit in federal court. *See Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam); *see also Kennecott Copper Corp. v. State Tax Commission,* 327 U.S. 573, 577–80, 66 S.Ct. 745, 746–49, 90 L.Ed. 862 (1946); *Great Northern Insurance Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944) ("When a state authorizes a suit against itself . . . it is not consonant with our dual system for the Federal courts to be astute to read the consent to embrace federal as well as state courts."); *Fouche v. Jekyll Island-State Park Authority,* 713 F.2d 1518, 1522 (11th Cir.1983) ("[C]onsent to suit in state court does not necessarily waive Eleventh Amendment immunity."); *Richins v. Industrial Construction, Inc.,* 502 F.2d 1051, 1055 (10th Cir.1974) ("[A] state's consent to be sued in the state's own courts does not serve to waive its Eleventh Amendment immunity."); *Williams v. Eaton,* 443 F.2d 422, 428 (10th Cir.1971). And we find no express or implied indication that the State of Oklahoma, either through its appointment of plaintiff to represent the indigent criminal defendant, or through the enactment of § 936, or both, has waived its Eleventh Amendment immunity from this suit in federal court to recover attorneys' fees.

In *Nichols v. Department of Corrections,* 631 P.2d 746, 748–51 (Okl.1981), the Oklahoma Supreme Court decided that the State of Oklahoma did not waive its Eleventh Amendment immunity from suit in federal court in enacting Okla.Stat.Ann. tit. 57, § 553 B (West Supp.1982). Section 553 B provides that "[t]he governmental immunity to tort action of the Department of Corrections of this State shall be waived to the extent of the amount of insurance or bond authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force or effect of such insurance or bond." *Id.* The court noted that § 553 B does not expressly waive the State's Eleventh Amendment immunity, 631 P.2d at 749, and stated that there is

"not a compelling reason for implying waiver of 11th Amendment immunity." *Id.* at 750. The court there observed that in enacting § 553 B, the Oklahoma legislature expressly waived the

> state court defense of sovereign immunity, thereby providing a state court forum for resolution of claims against the state for which there is liability coverage .... Denial of an additional federal court forum for resolution against the state does not render insurance expenditures futile, but simply directs [that] recovery must emanate from the state forum.

*Id.*

Similarly, even if § 936 is read to waive the State's immunity from suit for attorneys' fees in state court, that waiver should not be extended to the State's Eleventh Amendment immunity without a clear indication of legislative intent to do so. Refusing to imply a waiver of immunity from suit in federal court concerning attorneys' fees against the State "simply directs [that] recovery must emanate from the state forum." *Id. See also Litton Industries, Inc. v. Colon,* 587 F.2d 70, 73 (1st Cir.1978) ("The eleventh amendment effectively bars this contract action against the Commonwealth of Puerto Rico in the federal court."); 13 C. Wright, A. Miller & E. Cooper, *supra,* § 3524, at 93–94 ("[T]he Eleventh Amendment has been applied to protect a state from suit, without its consent, for breach of contract."); *cf. Markowitz v. United States,* 650 F.2d 205 (9th Cir.1981) (per curiam) (Eleventh Amendment immunity not waived despite state statute authorizing tort and contract suits against state, with no express limitation to actions in state court, and state supreme court decision abolishing sovereign immunity defense to tort claims); *Williams v. Eaton,* 443 F.2d 422, 427–29 (10th Cir.1971) (statutory waiver of immunity from suit in state court did not waive Eleventh Amendment immunity);

*Salkin v. Commonwealth of Puerto Rico,* 408 F.2d 682 (1st Cir.1969) (sovereign immunity precluded federal jurisdiction of tort action for damages against Commonwealth of Puerto Rico despite statutory authorization of such actions in commonwealth courts).[9]

We conclude that the State of Oklahoma has not waived its immunity from suit in federal court in a case of this sort. We therefore hold that the district court correctly dismissed plaintiff's action on the grounds of the Eleventh Amendment immunity of the State.

AFFIRMED.

---

**9.** We are mindful that attorneys' fees are awarded against the states both under 42 U.S.C. § 1988 and in cases of bad faith in the conduct of litigation by the states, despite the barrier of the Eleventh Amendment. *See Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). We are satisfied, however, that these exceptions do not apply here because the plaintiff seeks recovery of attorneys' fees based on services rendered in a separate, prior state court proceeding and because plaintiff does not assert a claim for attorneys' fees incident to a federal civil rights suit in which bad faith on the part of the State is shown.