**BURLINGTON NORTHERN, INC., Plaintiff,**

v.

**STATE OF NORTH DAKOTA, d/b/a North Dakota Mill and Elevator Association, Defendant.**

Civ. No. A78–2035.

United States District Court, D. North Dakota, Northeastern Division.

Nov. 13, 1978.

Louis A. Harris, Shirley A. Brantingham, St. Paul, Minn., for plaintiff; Frank J. Magill, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., of counsel.

Robert A. Alphson, Grand Forks, N. D., for defendant.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

The above-entitled action was commenced in this court by plaintiff, a common carrier, to recover for rail freight undercharges pursuant to § 6(7) of the Interstate Commerce Act of 1887, 49 U.S.C. § 6(7). Defendant has moved to dismiss the complaint on the grounds it fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and that this court lacks jurisdiction over the subject matter of the action, Fed.R.Civ.P. 12(b)(1). For the purposes of this motion to dismiss, the court will assume the truth of the factual allegations asserted in the complaint.

Plaintiff is a common carrier by railroad of property for hire in intrastate and interstate commerce and is subject to the tariff provisions of Part I of the Interstate Commerce Act, 49 U.S.C. §§ 1–26, which requires plaintiff to collect the full tariff charges prescribed by the Interstate Commerce Commission on all shipments transported. Defendant is an association owned and operated by the State of North Dakota and organized under N.D.Cent.Code ch. 54–18, to engage in the business of manufacturing and marketing farm products.

Since July 1975, defendant has tendered to plaintiff shipments of grain and grain products for transportation over plaintiff's trackage to various consignees located on the lines of the Long Island Rail Road Company (Long Island). The shipments were transported by plaintiff and connecting lines to consignees on the Long Island line. Plaintiff billed defendant for its authorized line-haul freight charges based on approved tariffs, and also billed defendant for a 12.5 per cent terminal surcharge maintained by the Long Island Rail Road Company. Defendant has paid the line-haul freight charges but has refused to pay the surcharge. Both plaintiff and defendant agree that the surcharge is unlawful, and plaintiff has challenged the applicability and lawfulness of the surcharge in an action filed in the United States District Court for the Eastern District of New York, *Atchison, Topeka & Santa Fe Ry. v. Long Island R. R.,* No. 78–C–1146 (E.D.N.Y., filed May 31, 1978). Plaintiff has commenced this action now, however, to prevent the extinction of any claim based on the surcharge, in case it is found lawful, because of the applicable three-year statute of limitations. 49 U.S.C. § 16(3)(a).

Defendant asserts two grounds for dismissal. (1) The complaint does not state a claim for relief because there is no "case or controversy," as is required by Article III of the Constitution, and because the action is not ripe for decision. This ground is based

on the assertion that the ultimate determination of this action is dependent upon the outcome of the action in the New York district court challenging the validity of the surcharge. (2) This court does not have subject matter jurisdiction of the action, because defendant is the State of North Dakota and is afforded immunity from suit in federal court by virtue of the Eleventh Amendment to the Constitution.

Because the Eleventh Amendment defense "partakes of the nature of a jurisdictional bar," *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), it will be discussed first. *See Edelman v. Jordan, supra; Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353, 1361 n.14 (9th Cir. 1977); *Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323 (7th Cir. 1977). If the Eleventh Amendment is applicable, the action must be dismissed, and the first ground asserted by defendant in its motion to dismiss will not be reached.

The Eleventh Amendment provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Before the Eleventh Amendment can be applied to bar an action in federal court, it must be determined that it is the state which is in fact being sued. The State Mill and Elevator, established in 1919, is owned and operated by the State of North Dakota. N.D.Cent.Code § 54–18–02 states in part as follows:

> In the creation of the North Dakota mill and elevator association, it is the intention of the legislative assembly that all acts of the association shall be the acts of the state of North Dakota functioning in its sovereign and governmental capacity. The North Dakota mill and elevator association is not a separate agency of the sovereign power, but is the state itself functioning.

And in *State of North Dakota v. National Milling & Cereal Co.,* 114 F.2d 777 (8th Cir. 1940), a case similar to this in that plaintiff sought a money judgment against the State Mill and Elevator Association, the court stated as follows:

> It seems clear that the action is one against the state and not against any separate entity. The clear language of the North Dakota statutes will not support a contrary view. The relief sought is a judgment against the state. The judgment must be satisfied out of public funds. Such a suit is one against the state.

114 F.2d at 778. The court holds that plaintiff in bringing an action against the North Dakota Mill and Elevator Association is suing the State of North Dakota.

The applicability of the Eleventh Amendment, however, does not dispose of this action. Although a state is immune from prosecution in federal court, it may waive that immunity and thus render itself amenable to federal jurisdiction. *See Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The waiver may be express or implied. An implied waiver of Eleventh Amendment immunity will not be readily found. The Eleventh Amendment confers a positive constitutional right on the states. To find a waiver, there must be found "an intentional relinquishment or abandonment of [that] right . . . ." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" 304 U.S. at 464, 58 S.Ct. at 1023. The concept of "fundamental rights" extends beyond those rights afforded criminal defendants and is applicable in the Eleventh Amendment context. *See Employees of Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare,* 452

F.2d 820 (8th Cir. 1971), *affirmed,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). Whether a state has waived its Eleventh Amendment immunity is a question of federal law. *Parden v. Terminal Railway,* 377 U.S. 184, 196, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

It is contended by plaintiff that the State of North Dakota has consented to being sued in federal court by virtue of N.D.Cent. Code § 54–18–12, which provides that civil actions may be brought against the state on causes of action claimed to have arisen out of the operations of the Mill and Elevator Association. A state can waive its sovereign immunity from suit in federal court by statute, but "such [an] interpretation could . . . only be warranted . . . by the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909).

■ At this point, it is necessary to distinguish between common law sovereign immunity and the constitutional sovereign immunity of the states afforded by the Eleventh Amendment. A state may consent to be sued in its own courts, as North Dakota has done in § 54–18–12 of the North Dakota Century Code, but that consent does not by itself amount to a consent to be sued in federal court. In *Employees of Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), Justice Marshall in his concurrence stated as follows in regard to the immunity from suit afforded by the Eleventh Amendment:

The issue is not the general immunity of the States from private suit—a question of the common law—but merely the susceptibility of the States to suit before federal tribunals.

411 U.S. at 293–94, 93 S.Ct. at 1622. Accordingly, a state statute allowing suit against the state to refund taxes collected improperly is not a consent to suit against the state by an individual in federal courts; *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Great Northern Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); and a statute allowing claims against a state liquor commission is not a consent to the assertion of those claims in federal court. *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 172, 29 S.Ct. 458, 53 L.Ed. 742 (1909). The state legislatures in the cases cited *supra* had abrogated their *common law* sovereign immunity, but in light of the " 'presumption against waiver' of fundamental constitutional rights," 304 U.S. at 464, 58 S.Ct. at 1023, the Court found that there had been no waiver of the *constitutional* sovereign immunity from suit in federal court conferred upon the states by the Eleventh Amendment.

Upon reading § 54–18–12 in light of the presumption against waiver, it is apparent that the North Dakota Legislature did not waive the state's immunity from suit in federal court, but only consented to suits being brought against the Mill and Elevator Association in state courts.[1] The statute does not specifically confine its effect to state courts, but neither did the statutes involved in *Ford, Read* or *Murray, supra.* In those cases the Court found no waiver of the Eleventh Amendment immunity and in

---

1. N.D.Cent.Code § 54–18–12 provides in full as follows:

    Civil actions on association transactions—Names of parties—Service—Venue—Audit board provisions inapplicable.—Civil actions may be brought against the state of North Dakota on account of causes of action claimed to have arisen out of transactions connected with the operation of the association upon condition that the provisions of this section are complied with. In such actions the state shall be designated as the state of North Dakota, doing business as North Dakota mill and elevator association, and the service of process therein shall be made upon the manager of the association. Such actions shall be brought in the county where the association shall have its principal place of business, except as provided in sections 28–04–01 through 28–04–04, 28–04–06, and 28–04–07. The provisions of section 54–14–04 shall not apply to claims against the state affected by the provisions of this section.

this case the court holds that N.D.Cent. Code § 54–18–12 does not waive the state's immunity from suit in federal court.

Plaintiff also contends that defendant has waived it^ immunity by engaging in an activity subject to federal regulation. Plaintiff cites *Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), for this proposition. *Parden* involved a suit under the Federal Employers' Liability Act [FELA], 45 U.S.C. §§ 51–60, against a railroad owned and operated by the State of Alabama. The Court found that Alabama had waived its Eleventh Amendment immunity in suits arising out of the operation of the railroad because: (1) the railroad industry is one pervasively regulated by the federal government, and Alabama had entered the industry with knowledge of that pervasive regulation; and (2) Congress, in enacting the FELA and creating a private cause of action for violations of the FELA, intended to abrogate the Eleventh Amendment immunity of the states. 377 U.S. at 192, 84 S.Ct. 1207.

■ The question of whether Congress intended to subject the states to federal jurisdiction is the threshold determination that must be made in any suit alleging waiver of constitutional sovereign immunity. *Edelman v. Jordan,* 415 U.S. 651, 672, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The

approach of the Supreme Court to the question of whether Congress intended to subject states to federal jurisdiction is illustrated by *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and *Edelman.* In *Edelman* the Court ruled that Illinois did not waive its Eleventh Amendment immunity by participating in a joint federal-state aid program under the Social Security Act because the Act did not "authoriz[e] suit by designated plaintiffs against a general class of defendants which literally included States or state instrumentalities." 415 U.S. at 672, 94 S.Ct. at 1360. In *National League of Cities,* the Court did find a congressional intent to subject states to federal jurisdiction under the 1974 amendments to the Fair Labor Standards Act in that the definition of "employer" was expanded to specifically include state public agencies.[2] 426 U.S. at 838, 96 S.Ct. 2465. It thus appears that Congress must *specifically* subject states to federal jurisdiction before congressional authorization of the abrogation of Eleventh Amendment immunity will be found. It does not appear that the threshold requirement of Congressional authorization of private suits against a state in federal court exists in this case.[3]

■ Part I of the Interstate Commerce Act makes several references to private law

---

**2.** *National League of Cities* did not involve the Eleventh Amendment, but turned on whether the Congress had gone too far in interfering with the integral functions of the state. The 1974 amendments were struck down as being beyond the powers of Congress. 426 U.S. at 852, 96 S.Ct. 2465. The question of whether Congress intended to authorize actions against states in federal courts, however, is the same as that presented in Eleventh Amendment immunity cases.

**3.** It might be argued that Congress has authorized suit against a state in federal court in any case where a state is engaging in interstate commerce because 28 U.S.C. § 1331(a) creates federal jurisdiction in cases arising under the Constitution, laws, or treaties of the United States. Since Congress has plenary power over interstate commerce by virtue of the Commerce Clause, a state engaging in interstate commerce, as the State of North Dakota has done here, waives its constitutional sovereign immunity.

This argument fails because there is no specific mention of states in 28 U.S.C. § 1331(a). Thus, under *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), there can be no finding of a congressional authorization to subject states to federal jurisdiction. This conclusion is reinforced by a reading of the Supreme Court cases involving the Eleventh Amendment, cited in the body of this order. In most of those cases, the question of whether 28 U.S.C. § 1331(a) constitutes a congressional authorization to sue states in federal court was *not discussed.* And in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Court, without discussing whether Congress intended to subject states to federal jurisdiction, held that the Eleventh Amendment barred a suit against the state for a common law claim brought under the then current equivalent of 28 U.S.C. § 1331(a). 134 U.S. at 9–10, 10 S.Ct. 504.

suits. 49 U.S.C. § 8 authorizes actions against common carriers to recover for damages suffered due to the carriers' violations of the Act. 49 U.S.C. § 9 also speaks of the liability of common carriers. States are not literally mentioned in either 49 U.S.C. § 8 or 49 U.S.C. § 9. If a state were a common carrier, it could arguably be said that Congress intended by these statutes to subject states to federal jurisdiction. The State of North Dakota is not operating as a common carrier; it is operating a mill and elevator.

The other section of the Interstate Commerce Act that refers to private law suits is 49 U.S.C. § 16(3)(a), a limitation statute which does not create a cause of action.

The court holds that the Interstate Commerce Act does not subject a state to federal jurisdiction in a private law suit and therefore the question of whether the State of North Dakota waived its constitutional sovereign immunity by engaging in an activity that may involve the use of a common carrier regulated by the I.C.C. does not arise.

The alleged liability in this action arises out of a commercial venture by the State of North Dakota. The fact that such ventures are ordinarily not conceived of as governmental in nature is immaterial. *State of North Dakota v. National Milling & Cereal Co.*, 114 F.2d 777, 779 (8th Cir. 1940). *See also Murray v. Wilson Distilling Co.*, 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909).

It may be argued that defendant's immunity from suit in federal court might adversely affect interstate commerce.

If any balancing of rights under the Commerce Clause against the right of the State's sovereign immunity is required, the well-recognized constitutional guarantee of sovereign immunity should pre-vail. An adverse effect on commerce which might result from preserving sovereign immunity in the present situation is minimal, particularly in view of other available remedies . . . .

*Employees of Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare*, 452 F.2d 820, 825–26 (8th Cir. 1971), *affirmed*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

IT IS ORDERED that the complaint in this action is DISMISSED.[4]

---

4. Plaintiff is not without a remedy. N.D.Cent. Code § 54–18–12 authorizes an action in state court. Actions arising under the Interstate Commerce Act may be brought in state courts, for there is no congressional grant of exclusive jurisdiction to the federal courts. *See Louisville & Nashville Railroad Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915). The state court would be required to apply federal law because of federal preemption in the field of interstate railroad transportation. *See City of Chicago v. Atchison, Topeka & Santa Fe Ry. Co.*, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958).